PHILLIP A. TALBERT
United States Attorney
MICHAEL G. TIERNEY
ARIN C. HEINZ
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES BARRETT,<br><br>Defendant. | CASE NO. 1:22-CR-00213-ADA<br><br>GOVERNMENT'S NOTICE AND MOTION *IN LIMINE* REGARDING DEFENDANT'S CRIMES, WRONGS, AND OTHER ACTS<br><br>HEARING DATE: April 24, 2023<br>HEARING TIME: 10:00 AM<br><br>TRIAL DATE: May 31, 2023<br>TIME: 8:30 a.m.<br>COURT: Hon. Ana de Alba |

The United States of America, by and through its attorneys, Phillip A. Talbert, United States Attorney, and Michael G. Tierney and Arin C. Heinz, Assistant United States Attorneys, makes the following Notice and Motion in Limine Regarding Defendant's Crimes, Wrongs, and Other Acts "Notice and Motion").

The Court should find evidence related to defendant Charles Barrett's consciousness of guilt admissible. The Court should defer ruling on evidence related to Barrett's criminal convictions and negative credibility findings by a state court until trial.

**I.      INTRODUCTION**

In August 2022, a grand jury indicted Barrett on three counts of sexual assault. Dkt. 1. The

1

charges involve a weekend in August 2016.  Victim K.G. traveled to Yosemite National Park on or about August 13, 2016, and met with Barrett and some of his friends at a local swimming hole.  Ex. 1, Extract from Search Warrant Affidavit, at BN 12128.  Barrett invited K.G. to watch a meteor shower with him that night.  *Id.*  After bringing K.G. to an isolated area in the woods, however, Barrett made aggressive sexual advances on K.G.  *Id.*  When she resisted, he became even more physically forceful.  He pushed K.G. to the ground, began choking her, and violently raped her.  *Id.*  That rape is the subject of Count One of the Indictment.  K.G. remained with Barrett that weekend out of fear.  *Id.*

The next day, following a hike, K.G. and Barrett swam together in the Tuolumne River.  *Id.* at BN 12128-29.  In or near the river, Barrett digitally penetrated K.G. without her consent.  *Id.* at BN 12129.  The nonconsensual digital penetration is the subject of Count Two of the Indictment.

Later that evening (August 14), Barrett suggested to K.G. that they shower together in a communal shower facility.  *Id.*  Barrett raped K.G. again while she cried out in pain.  That rape is the subject of Count Three of the Indictment.

The United States will also seek to offer evidence that Barrett sexually assaulted or attempted to sexually assault three other women: J.V., S.F., and E.B.  The United States will detail evidence related to these additional victims in a motion to be filed pursuant to Federal Rule of Evidence 413.

Trial in this matter is currently set for May 31, 2023.  ECF 33.  The United States anticipates that certain evidence regarding Barrett's prior criminal convictions, other crimes, wrongs, or acts, or pertinent character traits may become relevant at trial.  The Court should now rule on the admissibility of evidence, outlined below, and should be aware that the United States may seek to offer certain additional evidence depending on ow the trial proceeds.

II.     **GENERAL LEGAL STANDARDS**

This Notice and Motion covers a multitude of Barrett's prior convictions, wrongs, bad acts, and character traits.  Certain overarching principles of the Federal Rules of Evidence are important to evaluate this evidence.  In general, parties are entitled to admit relevant evidence—testimony or exhibits that have "any tendency to make a fact more or less probable than it would be without the evidence," when that fact is "of consequence in determining the action."  Fed. R. Evid. 401(a)-(b).  Relevant

2

evidence is admissible unless a specific legal standard says otherwise. Fed R. Evid. 402. Even if relevant, a court has discretion to exclude evidence where its "probative value is substantially outweighed" by certain types of danger, such as jury confusion, excessive delay, or unfair prejudice to the defendant. Fed. R. Evid. 403. Nearly all evidence that helps the prosecution is prejudicial to a defendant; Rule 403 permits exclusion only of evidence that aims more at the jury's emotions than the elements of the crime. *See United States v. Hicks,* 103 F.3d 837, 844 (9th Cir. 1996), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008)); *United States v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998).

Special rules govern character evidence. Evidence about a defendant's misconduct follows the general standards of relevance unless it is offered to prove the defendant's character (the defendant's possession of a character trait or that the defendant acted out that trait on specific occasion). *United States v. Watkins*, 600 F.2d 201, 204 (9th Cir. 1975); Fed R. Evid. 404(a)-(b). A detailed set of guidelines tests whether evidence of other acts falls under regular evidentiary rules or character rules. *Id.* at 404(b); *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020). Character evidence might nonetheless be admissible. It can be admissible where a character trait is relevant. Fed R. Evid. 404(a). It can also be relevant when a witness—including the defendant—testifies. *Id.* at 404(a)(3); 608; 609. Accordingly, when considering evidence of Barrett's prior convictions, wrongs or other acts, or character traits, the Court should consider the relevance of the evidence, the purpose for which it is offered, and which set of evidentiary rules applies to test its admission.

### III.     Barrett's Crimes, Wrongs, Other Acts, and Character Evidence

#### A.     Barrett's Consciousness of Guilt

Barrett demonstrated consciousness of guilt regarding his sexual assault of K.G. in a number of ways; evidence of each is admissible at trial.

##### 1. Barrett's September 2016 Suicide Attempt

K.G. and Barrett exchanged text messages following the offense. On September 13, 2016, Barrett messaged K.G. asking whether the two could be friends. Ex. 2, Text message thread, at BN 174. K.G. responded that she "find[s] it hard to be friends with guys who rape me." *Id.* Receiving this text message prompted Barrett into what he later agreed (during a 2021 interview with law enforcement) was

3

a "meltdown." Ex. 3, Extract of Interview Tr., at BN 10845-46;[1] Ex. 1 at BN 12130. Barrett became afraid that he would be arrested and sent to prison. Ex. 3 at BN 10847. This fear sparked Barrett to threaten suicide. *Id.*; Ex. 1 at BN 12130. Less than a week after receiving K.G.'s text, Barrett told his roommate that the police were after him and he had nothing to live for. Ex. 4 at BN 548. Barrett said he had a gun and was going out into the woods. *Id*. The roommate called law enforcement. *Id.* Law enforcement eventually found Barrett and took him into custody. During a 2021 interview with law enforcement, Barrett told investigators that he feared prison because K.G.'s report was false but that "there's nothing you can do. That's how our court system works, you know?" Ex. 3 at 10847.

### 2. Evidence of Barrett's Suicide Attempt is Admissible

Federal courts have recognized that suicide threats can show a defendant's knowledge of guilt. *United States v. Cody*, 498 F.3d 582, 591–92 (6th Cir. 2007); *United States v. Domenech*, No. CR 14-183 (JDB/GMH), 2017 WL 1653151, at *4 (D.D.C. May 2, 2017). Courts within the Ninth Circuit do not appear to have reached the question directly; one court found no federal law violation when a state court instructed jurors they could infer consciousness of guilt from a suicide attempt. *Mankyan v. Soto*, No. CV 13-3615 GHK (RAO), 2015 WL 7820573, at *7 (C.D. Cal. Sept. 10, 2015), *report and recommendation adopted*, 2015 WL 7853678 (C.D. Cal. Dec. 2, 2015). Moreover, evidence of suicidal threats is similar to a defendant's post-offense flight, *Cody*, 498 F.3d at 591, and the Ninth Circuit does have a test for whether flight evidence is admissible. That test asks how strongly the following inferences can be drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Fox*, 627 F. App'x 608, 609 (9th Cir. 2015) (internal citation omitted). The Sixth Circuit used the same test in evaluating (and upholding) suicide evidence. *Cody*, 498 F.3d at 592.

The chain of inferences is straightforward here. Barrett himself admitted his suicidal threat stemmed from K.G.'s rape accusation and his consequent fear of returning to prison. Ex. 3, Interview

---

[1] During this portion of the interview, Barrett and an investigator reviewed the two convictions discussed in Section III: his 2004 conviction for slashing the ranger's tires and his 2009 conviction for assaulting B.H. Ex. 9 at BN 1845-46.

Tr., at BN 10845-46.  It is certainly true that Barrett claimed in 2021 that his distress stemmed from K.G. having made a false accusation, but he made no such comment at the time.  And in any event, Barrett is free to argue his view of the suicide attempt.  Like all consciousness of guilt evidence, suicidal threats can be consistent with innocence—indeed, a court can explicitly instruct a jury that innocent explanations are possible.  *See United States v. Dixon*, 201 F.3d 1223, 1233 (9th Cir. 2000) (upholding instruction that advised jurors they could consider flight as consciousness of guilt but could also consider innocent explanations for flight).  As with much evidence, Barrett's competing inference "goes to the weight of the evidence, not its admissibility." *United States v. Flores*, 802 F.3d 1028, 1047 (9th Cir. 2015).  The Court should therefore allow the United States to present evidence of Barrett's September 2016 suicide threat to show his consciousness of guilt.

 3. Barrett's Attempts to Manufacture Evidence

On January 11, 2023, Barrett made a call from Fresno County Jail to M.W.  He told M.W. that after the alleged rape in 2016, K.G. left a handwritten note in Barrett's truck stating "thank you for the awesome weekend in Yosemite."  Ex. 5, Jan. 11, 2023 recorded call.  Barrett asked M.W. to look in Barrett's truck for this supposed note.  *Id.*  (Law enforcement searched Barrett's truck in late August 2022 during his arrest pursuant to a search warrant; no such note was recovered).  M.W.'s comments revealed that this activity was not a search for true evidence; he asked Barrett if he (M.W.) should affix K.G.'s signature to any note he found.  Barrett reminded him that the call was being recorded by authorities and said M.W. should not do that.  *Id.*

Barrett called M.W. again on January 14, 2023.  M.W. and Barrett discussed whether authorities would perform a handwriting analysis on any note found in Barrett's truck.  Barrett responded that it did not matter if analysis concluded it was not K.G.'s handwriting because she "changed her story" and "[c]an't I have something to throw in the works that is hard to prove?"  *Id.*  Barrett later asked his father to check in with M.W. regarding the note, and Barrett's father said that M.W. had not found any note.

M.W. would have been unable to find any such note because none existed.  Barrett's statements—suggesting that fabrication would be fine so that Barrett could have "throw in" something that was "hard to prove," and reacting to M.W.'s forgery offer merely by telling him not to discuss it on a recorded line strongly suggest that Barrett was attempting to manufacture evidence.

5

     4.  <u>Barrett's Attempts to Manufacture Evidence Are Admissible</u>

Manufacturing false evidence—whether by a false exculpatory statement or a false document—is proof of a defendant's guilty mind. *United States v. Newman*, 6 F.3d 623, 628 (9th Cir. 1993) (upholding admission of false exculpatory statements as consciousness of guilt); *Wilson v. United States*, 162 U.S. 613, 621 (1896) (reasoning that "[t]he destruction, suppression, or fabrication of evidence undoubtedly gives rise to a presumption of guilt, to be dealt with by the jury.")  Proof of a guilty mind is circumstantial evidence of "the fact of guilt itself," *United States v. Guerrero*, 756 F.2d 1342, 1347 (9th Cir. 1984) (internal citation omitted), and it is therefore material under Federal Rule of Evidence 401.

Courts agree that consciousness of guilt evidence is not character evidence. *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995).  And because evidence is material and not offered for character, it should generally be admitted. *See United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).  Courts have been less consistent in specifying whether consciousness of guilt evidence falls under Federal Rule of Evidence 404(b), and if so, whether it should be evaluated under the same standards developed for that Rule. *Compare Meling* (reasoning that consciousness of guilt was properly admitted under Rule 404(b) but not further examining Rule 404(b) standards *with United States v. Goss*, No. 4:06-CR-00024 JWS, 2006 WL 3391511, at *5 (D. Alaska Oct. 10, 2006) (reasoning that Rule 404(b) was inapplicable to false statement made by defendant that revealed consciousness of guilt).  *See generally United States v. Bradley*, 924 F.3d 476, 483 (8th Cir. 2019); *United States v. Marfo*, 572 F. App'x 215, 226 (4th Cir. 2014) (discussing the range of opinions).

Barrett's attempts to fabricate evidence are admissible under any applicable standard.  They concern Barrett's efforts to manufacture a document to assist his defense in this case.  They are therefore an attempt to influence the ongoing prosecution.  They show Barrett's guilty mind regarding this offense, and not his general character.  Thus, they are admissible as direct evidence regarding this offense. *See Marfo*, 572 Fed. App'x at 226 (reasoning that Rule 404(b) analysis was not necessary; "Marfo's threats and statement of intent to kill witnesses in the same case in which he was charged were intrinsic evidence of consciousness of guilt.")  The Court should accordingly admit them.

Barrett's evidence fabrication is also admissible under the standard Rule 404(b) test.  Courts within the Ninth Circuit follow a two-step test to evaluate other acts evidence under the Rule.  The first

6

step has four parts. It asks whether: "(1) the evidence tends to prove a material point; (2) the act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) the act is similar to the offense charged, in cases where knowledge and intent are at issue." *Lague*, 971 F.3d at 1038.

Courts then turn to the second step. "Once it has been established that the evidence offered serves one of [the 404(b)] purposes . . . the only conditions justifying the exclusion of the evidence are those described in Rule 403." *Curtin*, 489 F.3d at 944. Rule 403 favors admission of relevant evidence except where its probative value is substantially outweighed by other dangers. Fed. R. Evid. 403.

Here, the evidence proves a material point because it makes it more likely that Barrett knows that he sexually assaulted K.G. It is not too remote in time because it occurred in January 2023. Courts have permitted 404(b) evidence much more remote in time. *See, e.g., United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) ("[W]e have found that a thirteen-year-old conviction is not too remote to be admitted under Federal Rule of Evidence 404(b)."). There is "low threshold" of showing sufficient evidence that the other act occurred; recorded jail calls exceed the standard. *See United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). And finally, similarity is not necessary because the evidential hypothesis does not depend on such similarity; it focuses instead on Barrett's direct knowledge of his guilt. *See generally United States v. Arambula-Ruiz*, 987 F.2d 599, 603 (9th Cir. 1993) (noting that similarity requirement varies based on the hypothesis for which it is offered).

Nor is the probative value of the evidence substantially outweighed by any danger or risk of unfair prejudice. As the Ninth Circuit has noted, "evidence relevant to a defendant's motive is not rendered inadmissible because it is of a highly prejudicial nature . . . . The best evidence often is." *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977) (quoting *United States v. Mahler*, 452 F.2d 547 (9th Cir. 1971)). Only evidence that "has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" is considered "unfairly" prejudicial. *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (quoting Advisory Committee Notes to Rule 403). Accordingly, while Barrett's evidence-fabrication may be unfavorable to him, it should not be excluded under Rule 403. Accordingly, Barrett's efforts to fabricate evidence in his favor demonstrate his consciousness of guilt and the United States may admit them in its case in chief.

5. <u>Barrett's Intimidation of Victims K.G., S.F. and E.B.</u>

Along with this Notice and Motion, the United States is filing a Motion in Limine seeking to admit evidence that Barrett sexually assaulted, or attempted to sexually assault, additional victims. The Court should admit testimony that Barrett threatened both the additional victims and K.G. for three interrelated reasons under Rule 404(b). First, "[c]ourts may consider evidence of threats or intimidation to government witnesses" because it "tends to show consciousness of guilt." *United States v. Guerrero-Cortez*, 110 F.3d 647, 652 (8th Cir. 1997) (collecting authority). Second, threats can explain why victims delayed or did not report a defendant's crimes. *See, e.g., United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996) (evidence of prior bad acts admissible under Rule 404(b) to demonstrate how a victim "could be afraid enough to submit to such actions quietly"); *United States v. Faulls*, 821 F.3d 502, 508-09 (4th Cir. 2016) (domestic violence admissible under Rule 404(b) to explain the defendant's "control and domination" over his victim, and to explain why the victim remained with the defendant). Third, they constitute a "common scheme" or plan to intimidate victims from coming forward. *United States v. Uramoto*, 638 F.2d 84, 86 n. 2 (9th Cir. 1980).

Each applies here. To understand Barrett's threats as witness intimidation and as a common scheme, it is significant that Barrett sees each of the victims (K.G. and the uncharged victims) as acting together against him. Ex. 5, Jail calls from Sept. 21, 2022 and Nov. 5, 2022. For example, Barrett told a friend that "It's known that they [S.F and other victims] are working together." *Id.*, Sept. 21, 2022. In his July 2021 interview with law enforcement, Barrett initially claimed that K.G. was the first person to ever accuse him of sexual assault. Ex. 3 at BN 10809-10. In response, a law enforcement agent told Barrett that S.F. also came forward reporting that Barrett sexually assaulted her. *Id*. In that same interview, Barrett later told the agent that K.G. and S.F. were "teamin' up together to try to ruin my life." Ex. 3 at BN 10814.[2] Thus, from at least July 2021 onward, Barrett saw S.F. and K.G. as working together, and so any threats toward one would presumably affect the other.

Months later, Barrett threatened to kill S.F. Barrett entered an emergency room in Mammoth, California, and told the staff that he would kill himself or in the alternative, drive to where he believed

---

[2] Barrett claimed, without evidence, to have been receiving text messages threatening to reveal him as a rapist. *Id.* at BN 10814.

S.F. lived and shoot her.  Ex. 1 at BN 12133.  Barrett later admitted that his threat to S.F. violated California Penal Code Section 422(a)(Criminal Threat).   Ex 6, Mono County Superior Court records, at BN 1511.

Barrett's threats to S.F. and K.G. are part of a common plan to intimidate his victims.  That includes other attempts to intimidate S.F.  For example, in 2018 Barrett changed his social media profile to a picture of S.F.  Ex. 1 at BN 12132.  In 2019 he posted a new climbing route within Yosemite National Park as "Fuck you [S.F.]."  *Id.*  In October 2019, K.G. traveled to the Red River Gorge area of Kentucky, which is a noted climbing area.  Despite K.G. having accused him via text twice in 2016 asserted that he raped her, Barrett texted her "Hey. Know we had a weird time and don't want any awkwardness but is that you? Hope you're crushing. Is this you?"  Ex. 1 at BN 12130.  (Barrett admitted sending the message, portraying it as a "nice message," Ex. 3 at BN 10815-16).  K.G. learned that Barrett was in the Red River Gorge area at the time.

Barrett also threatened E.B. after sexually assaulted her.  This included threats to kill himself and her, and multiple unwanted visits to her home.  Local police arrested Barrett and sought an Emergency Protective Order on E.B.'s behalf.  Ex. 7, Sebastopol Police records.   Barrett eventually threatened E.B. that if she continued to pursue the charges against him he would "ruin her life" and do "unspeakable" things to her. Ex. 1 at BN 12135.  Barrett ultimately pled nolo contendere to misdemeanor trespassing and the state dismissed the other two charges.  Ex. 8, Sonoma County Court records. He was sentenced to a 24-month suspended sentence. *Id*.  Barrett therefore had a common plan to prevent his victims[3] from pursuing charges against him for his sexual assaults.  Though his methods differed in some particulars, they aimed at a common goal.

Like the other consciousness of guilt evidence, Barrett's threats to S.F., K.G., and E.B. are admissible under Rule 404(b).  They prove a material point because they make it more likely that Barrett knows that he victimized S.F., E.B., and K.G., shows his consciousness of guilt, and displays a common plan.  The intimidation of S.F. and K.G. is not too remote in time because it occurred from Late 2016

---

[3] There is no evidence that Barrett threatened the final uncharged victim, J.V.  However, J.V. had not disclosed Barrett's assault to him or anyone except her roommate until January 2023, when Barrett was in custody for this offense.  Barrett thus apparently perceived no need to threaten J.V., in contrast to each of the other victims, who Barrett knew had accused him or were in contact with police.

9

until 2022. Barrett admitted that he engaged in the January 2022 threat to kill S.F. (and thereby intimidate K.G.) by pleading guilty to a criminal threat. His threats to E.B. are documented in police reports and court records. His other messages to K.G. are documented by K.G. retaining his texts and through forensic analysis. And finally, similarity is not necessary because the evidential hypothesis does not depend on such similarity; it focuses instead on Barrett's direct knowledge of his guilt. The Court may therefore admit evidence of Barrett's threats to his victims.

6. Barrett's Threats to Victims as Impeachment Evidence

Even if they are not admissible under Rule 404(b), these acts are relevant to Barrett's character for truthfulness, and he could be cross-examined about them under Rule 608(b) should he testify. A witness who threatens another person in order to "influence the truthfulness of other people's testimony" harms his or her own credibility and can be impeached for such conduct. *United States v. Miles*, 207 F.3d 988, 993 (7th Cir. 2000). *Cf. United States v. Mikhel*, 889 F.3d 1003, 1048 (9th Cir. 2018) (exclusion of cross-examination under Rule 608(b) for alleged threats to a witness proper where there was insufficient evidence of the threat). Here, Barrett's threats against his victims, particularly when combined with his efforts to fabricate evidence, provide important evidence that undermines Barrett's character for truthfulness should he testify.

**B.     Barrett's Prior Criminal Convictions**

Barrett has four criminal convictions or admissions that may be relevant at trial.

1. 2005 Vandalism Conviction

In September 2004, law enforcement rangers in Yosemite arrested Barrett for driving under the influence of alcohol. Ex. 9, Change of Plea Tr. at 10. Shortly after the arrest, Barrett slashed the tires on a personal vehicle belonging to one of the law enforcement rangers involved in the arrest. *Id.* at 10-11. In December 2006, Barrett pleaded guilty to a Class A misdemeanor violation of Title 36, Code of Federal Regulations, Section 2.31(a)(3) – Vandalism. Ex. 10, Judgment and Commitment, at 1. The court sentenced Barrett to six months' imprisonment. *Id.* at 2.

2. 2009 Domestic violence conviction

In October 2008, Barrett committed felony domestic violence against a prior girlfriend, B.H. Barrett began roughly playing with B.H.'s dog. When B.H. told him to stop, he repeatedly punched

B.H. in the face. Ex. 1 at 12127. Barrett's repeated blows caused B.H. to fall to the ground and sustain injuries to her face. *Id.*; Ex. 11, Police Report, at BN 642-43. In January 2009, Barrett pleaded no contest to felony domestic violence charges in Mono County Superior Court. Ex. 12, Mono County Superior Court records at BN 11478-87.

### 3. 2019 Trespassing Conviction

As noted above in Section III.A.5, Sebastopol Police arrested Barrett for threatening E.B. and trespassing at her home in the wake of his sexual assaults. Barrett ultimately pleaded nolo contendere to misdemeanor trespassing. Ex. 8, Sonoma County Court records. Barrett was granted a conditional sentence, deferring the imposition or execution of his sentence. *Id.*; *United States v. Collins*, 28 F. Supp. 2d 1114, 1115 (N.D. Cal. 1998) (discussing "conditional sentences" in California).

### 4. 2022 Criminal Threat Guilty Plea

As noted above in Section III.A.5, Barrett pleaded guilty in August 2022 to violating California Penal Code Section 422(a), Criminal Threats, regarding his threat to kill S.F. Ex 6. Penal Code Section 422(a) prohibits anyone who "willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat." *Id.* Barrett's sentencing hearing was deferred until May 22, 2023 and he was placed on diversion.[4]

**C.   Legal Analysis of Barrett's Prior Convictions and Admission**

At present, the United States does not intend to offer evidence that Barrett was previously convicted of a crime during its case in chief. However, testimony about the acts that led to the convictions, or Barrett's statements about those underlying acts or convictions, may be admissible (including during the case in chief or rebuttal) under several circumstances.

### 1. Impeachment of Barrett Under Rules 608 or 609

Should Barrett testify, the United States may seek to impeach him with information about the convictions. Federal Rule of Evidence 609 permits impeachment of any witness with certain felony convictions. Barrett has only one felony conviction: the 2009 domestic violence conviction. Because

---

[4] Barrett was arrested pursuant to the federal arrest warrant immediately following the August 29, 2022 court appearance and has remained in federal custody since that date. The United States anticipates that because Barrett's incarceration has prevented any violations, the matter will be dismissed.

11

the conviction occurred more than ten years ago, he can be impeached with the fact of the conviction only if its probative value "substantially outweighs its prejudicial effect." Fed R. Evid. 609(b). The drafters of Rule 609 contemplated that the use of older convictions would be rare and exceptional; a court must make specific findings of fact to authorize use of such a conviction. *United States v. Bensimon*, 172 F.3d 1121, 1126 (9th Cir. 1999). Courts use a multi-factor test to evaluate admissibility under this standard.[5] Any ruling on the use of the domestic violence conviction should await Barrett's potential testimony. If Barrett does testify and that testimony implicates the 2009 conviction, the United States will notify the Court if it has any intention of impeaching Barrett with the conviction. The Court can at that time evaluate the United States' proffer and examine impeachment under Rule 609(b).

Barrett might also be impeached because he has made numerous false statements about the convictions. Should Barrett testify, he can be impeached by specific prior instances of misconduct since they are probative of Barrett's character for truthfulness. Fed R. Evid. 608(b). Here, the relevant acts are not his convictions, but the many false statements he made about them—for example, Barrett has frequently told people that he did not strike B.H. on purpose, but rather accidentally, in the course of fending off her dog. Ex. 13, Stmts of E.W. and T.S., at BN 554, 606. Those false statements are admissible under Rule 608(b). *United States v. Schatzle*, 901 F.3d 252, 255-56 (2d Cir. 1990) (holding that trial court properly allowed evidence under Rule 608(b) that witness failed to report prior arrest on bar application and properly precluded further evidence about the arrest); *United States v. Sherlin*, 67 F.3d 1208, (6th Cir. 1995) (affirming impeachment through false statements made to investigators about prior crime). *See also United States v. Reid*, 634 F.2d 469, 473 (9th Cir. 1980) (upholding cross examination based on false statements made in a letter eight years before trial).[6] Accordingly, if Barrett testifies, the Court should permit impeachment of his character for truthfulness with specific acts of dishonesty—such as false statements about his prior conviction—that relate to truthfulness.

---

[5] The factors are: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility." *Simpson v. Thomas*, 528 F.3d 685, 690 n.3 (9th Cir. 2008).

[6] Remoteness in time is a factor for courts to consider, but courts have approved impeachment by acts occurring more than a decade prior to trial. *United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989).

12

Barrett can only be impeached under Rule 608(b) with questions about his false statements; the United States cannot offer "extrinsic evidence" (documents or testimony into evidence regarding the prior act). Fed. R. Evid. 608(b).  It can show a document to Barrett that has not been admitted into evidence. *United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989).  If Barrett testifies falsely during such cross-examination, the United States can offer extrinsic evidence of his prior statements—because then he is being impeached with a prior inconsistent statement. *Id.* at 1449; Fed. R. Evid. 613(b).  Moreover, if the prior convictions or admissions contradict Barrett's testimony, they may be admissible because of that contradiction. *United States v. Castillo*, 181 F.3d 1129, 1133-34 (9th Cir. 1999) (explaining "impeachment by contradiction").  Therefore, there are a variety of circumstances in which Barrett's prior convictions (or evidence about them) may become admissible at trial as impeachment.

    2.  <u>Rule 404(a) Pertinent Character Traits</u>.

Barrett may choose to offer testimony about pertinent character traits that may make the previous convictions admissible.  For example, Barrett may offer evidence that he possesses a pertinent character trait, such as "honesty, truthfulness, law-abidingness, peaceableness," or non-violence.  Fed R. Evid. 404(a)(2)(A); *United States v. Weber*, No. CR 21-28-M-DLC, 2022 WL 2463039, at *2 (D. Mont. July 6, 2022) (collecting authority); *United States v. Barry*, 814 F.2d 1400, 1402-03 (9th Cir. 1987).[7] Generally, that evidence can only take the form of a witness testifying about the witness's own opinion of Barrett's trait or Barrett's reputation for that character trait.  Fed. R. Evid. 405(a).

Should Barrett offer any such evidence, the United States would be permitted to cross-examine the witness regarding Barrett's prior convictions and admissions.  Fed. R. Evid. 405(a).  Even convictions that are remote in time may properly be the subject of cross-examination. *United States v. Edwards*, 549 F.2d 362, 367 (5th Cir. 1977) (upholding cross-examination about arrests and convictions occurring more than twenty years prior to charged conduct); *United States v. Williams*, 665 F. App'x 780, 782 (11th Cir. 2016) (upholding cross-examination based on 14 year-old felony shoplifting

---

[7] A defendant's "sexual morality and decency" may be a pertinent character trait in sex offenses. *See Weber*, 2022 WL 2463039, at *3-4 (holding in a child-pornography prosecution that sexual decency was a pertinent trait and allowing evidence of it).

13

conviction).

Moreover, should Barrett testify or offer evidence that his that his character is incompatible with committing the charged offenses or that he generally has good character, the United States is entitled to rebut that evidence with Barrett's prior convictions because Barrett has "opened the door" to such testimony. *United States v. Mendoza-Prado*, 314 F.3d 1099, 1105 (9th Cir. 2002).

### D. Prior Negative Judicial Comments Regarding Barrett's Truthfulness

In January 2021, Barrett brought a claim in the Lee Circuit and District Courts, Kentucky, alleging that B.L. slashed Barrett's tires. Ex 15, Court Notes, at BN 336. The court entered judgment against Barrett. In written comments, the court noted that Barrett had "provided no evidence to prove" his claims. *Id*. It further noted that Barrett testified that he witnessed the incident—a key detail that Barrett had omitted in his own earlier "sworn affidavit." *Id*. In short, the court's opinion discloses that Barrett was not candid during the lawsuit. Barrett can be cross-examined based on these comments. *See United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir.1983) (upholding cross-examination of witness regarding immigration judge's negative credibility determination under Fed.R.Evid. 608(b)); *United States v. Cedeno*, 644 F.3d 79, 82–83 (2d Cir. 2011).

### IV. CONCLUSION

For the foregoing reasons, the United respectfully requests that this Court grant the government's motion permitting the use of Barrett's other crimes, wrongs, or acts that amount to consciousness of guilt and analyze at trial his prior convictions and findings of untruthfulness to determine whether they are admissible.

Dated: March 22, 2023                                    PHILLIP A. TALBERT
                                                         United States Attorney


                                                         */s/ Michael G. Tierney*
                                                         MICHAEL G. TIERNEY
                                                         ARIN C. HEINZ
                                                         Assistant United States Attorneys