PHILLIP A. TALBERT
United States Attorney
MICHAEL G. TIERNEY
ARIN C. HEINZ
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:22-CR-00213-ADA |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DOC 67) |
| v. | HEARING DATE: June 20, 2023<br>HEARING TIME: 10:00 AM |
| CHARLES BARRETT, | |
| Defendant. | TRIAL DATE: August 22, 2023<br>TIME: 8:30 a.m.<br>COURT: Hon. Ana de Alba |

On April 13, 2023, Defendant Charles Barrett filed a Motion to Dismiss (Doc. 67) (the "Motion to Dismiss"). The Court should deny the Motion to Dismiss. Under the express terms of 18 U.S.C. § 3299, the Indictment was timely. The Court should not dismiss the case due to preindictment delay, because Barrett has not established prejudice. Even if he had, the reasons for delay reveal no unfairness.

## I. There is No Statute of Limitations for the Charged Offenses

### A. Relevant Facts

The Indictment charges Barrett with three crimes. Counts One and Three allege that Barrett violated 18 U.S.C. § 2241(a)(1). Doc. 1 at 1-2. Each of 2241's subsections are felonies, carrying a maximum term of life in prison. The statute is part of Chapter 109A of Title 18 of the United States

1

Code. Count Two alleges that Barrett violated 18 U.S.C. § 2244(b). Doc. 1 at 2. Section 2244(b) is also a felony and carries a maximum term of imprisonment of two years. The statute is also part of Chapter 109A.

**B. Argument**

The Adam Walsh Child Protection and Safety Act ("Adam Walsh Act") became law in September 2006 and removed the limitations period for "most felony sex offenses," including the charges in the Indictment. *United States v. Vickers*, No. 13-CR-128-A, 2014 WL 1838255, at *8 (W.D.N.Y. May 8, 2014); *United States v. Webster*, No. 3:06-CR-00096-HRH-JDR, 2007 WL 9821412, at *3 (D. Alaska Nov. 13, 2007). One portion of the Adam Walsh Act was codified at 18 U.S.C. § 3299. *Webster*, 2007 WL 9821412, at *3. Section 3299 provides that "notwithstanding any other law," indictments or informations may commence "at any time without limitation" for violations of 18 U.S.C. § 1201 involving minor victims, as well as "any felony" under Chapters 109A, 110, or 117 of Title 18 of the United States Code,[1] and any violation of 18 U.S.C. § 1591. 18 U.S.C. § 3299.

Section 3299 thus applies to two categories of crimes. The first category involves a specific statute (18 U.S.C. § 1201) and includes only cases with minor victims. 18 U.S.C. § 3299. The other category comprises "any felony" brought under certain chapters or code sections within Title 18 (Chapter 109A, 110, 117, and 18 U.S.C. § 1591). *Id.*; *United States v. Wilkins*, No. CR 19-390 (RC), 2022 WL 2643557, at *6-7 (D.D.C. July 8, 2022). Regarding the "any felony" violations, courts need only determine whether the crime at issue is within those chapters or code sections—if so, no limitation period applies. *United States v. Webster*, 797 F.3d 531, 534 (8th Cir. 2015) (concluding that there was no statute of limitations for 18 U.S.C. § 2241(c) because it falls within Chapter 109A); *United States v. Gatewood*, No. CR-11-08074-PCT-JAT, 2012 WL 12538567, at *2 n. 1 (D. Ariz. Oct. 11, 2012) (holding that "[u]nder the Adam Walsh Child Protection and Safety Act of 2006, codified in part in § 3299, there is no statute of limitations for any offense under § 1201(a) involving a minor victim and any felony charge under Chapter 109A, which includes §§ 2241, 2243, and 2244.") *United States v. Sensi*, No. 3:08-CR-253 (WWE), 2010 WL 2351484, at *2 (D. Conn. June 7, 2010) (holding that Section 3299

---

[1] Two statutes within Chapter 110 are excepted from this provision; neither is relevant here.

2

directed no limitation period for three counts because two of them were within Chapter 110 and the other was in Chapter 117). That is the case here. Each of the charged crimes in the Indictment is a felony violation within Chapter 109A, so no limitations period applies.

It is true that most cases interpreting Section 3299 involve minor victims, but that makes no difference to the "any felony" violations such as Chapter 109A. In *Wilkins*, a district court considered a case involving an adult victim and a defendant charged under an "any felony" violation, 18 U.S.C. § 1591. *Wilkins*, 2022 WL 2643557 at *6. The court held that section 3299 foreclosed any period of limitations. *Id.* at 6-7. The statute's text and structure both support this conclusion. The court noted that the text flatly states "any felony" violation of the relevant chapters carries no limitation period. 18 U.S.C. § 3299; *Wilkins*, 2022 WL 2643557 at *6. The text is reinforced by the structure: Section 3299's first category applies only in cases of minor victims, but Congress did not carry that restriction into the other categories—strongly implying that cases in those other categories involving adults carry no limitations period. *Wilkins*, 2022 WL 2643557 at *7 (reasoning that "Congress expressed a clear intent to remove the limitations period for sex trafficking offenses committed against minors and adults alike under § 1591." At least one other court has likewise determined that no limitations period applied in a case involving adult victims of an "any felony offense. *Wilkins*, 2022 WL 2643557, at *7, citing *United States v. Biancofiori*, No. 16 CR 306-1, 2018 WL 2463387, at *2 (N.D. Ill. June 1, 2018). The *Biancofiori* court did not mention that the victims were adults in its statute of limitations section,[2] and that is no surprise—age is irrelevant; the court needed only to know what statute was charged to reject the statute of limitations claim. *Biancofiori*, 2018 WL 2463387, at *2 (noting that charges at issue involved 18 U.S.C. § 1591, an "any felony" offense). This Court should likewise apply the straightforward text and structure of Section 3299. Barrett is charged with felonies within Chapter 109A, an "any felony" section under Section 3299, and therefore no limitations period applies.

The Motion to Dismiss argues that 18 U.S.C. Section 3282, the general statute of limitations for non-capital crimes, applies here. Doc. 67 at 6-7. That is not the case. Section 3299 applies "[n]otwithstanding any other law." *Id.* Section 3299 was part of an ongoing congressional effort to

---

[2] It mentioned the age of the victims in rejecting a challenge to expert testimony. 2018 WL 2463387, at *3.

establish longer statutes of limitation for certain serious crimes; each of those new statutes of limitation took the crimes at issue outside the general statute of limitations. *See United States v. Sure Chief*, 438 F.3d 920, 922 (9th Cir. 2006); *United States v. Greene*, No. 3:09-CR-00053-TMB-DMS-01, 2010 WL 11579992, at *3 (D. Alaska Apr. 13, 2010). Several courts have specifically held that Section 3299 supplants the general statute of limitations. *United States v. Johnson*, No. 19-271-CR, 2021 WL 1157273 (2d Cir. Mar. 26, 2021); *Wilkins*, 2022 WL 2643557 at *6-7; *United States v. Welton*, No. CR0900153MMM, 2009 WL 4507744, at *16 (C.D. Cal. Nov. 30, 2009). Those courts reasoned correctly. The more specific Section 3299—which applies to the crimes charged here—controls and removes any limitation period. The Court should therefore deny the Motion to Dismiss.

## II. Preindictment Delay Did not Cause Barrett Prejudice or Unfairness

### A. Relevant Facts

K.G. reported the August 2016 sexual assaults to law enforcement in April 2020. Ex. 1, Report of Agent McGee, at BN 177. K.G. soon thereafter explained a key motivation for the delay: she had been living in fear that Barrett would kill her. *Id.* She detailed a series of things that Barrett had done that she believed were attempts to intimidate her and another victim of Barrett's sexual assaults. *Id.* at BN 177-79. Law enforcement concluded that K.G.'s fear of retaliation was credible. Ex. 2, McGee Decl., at ¶ 5. Barrett had a history of retaliating against those he perceived wronged him and caused him legal trouble—including a conviction for slashing the tires of a law enforcement officer who arrested Barrett for DUI. Ex. 1 at BN 177; Doc. 50 at 10. Barrett also threatened a E.B., another of his sexual assault victims, into dropping a restraining order. Doc. 50 at 9. Barrett also threatened victim S.F., and K.G. learned of those threats. Ex. 1 at BN 177; Doc 50 at 9.

Investigators faced a difficult task in investigating K.G.'s report because of Barrett's threats, his prominence in the small world of rock-climbing, and the general reluctance of sexual assault victims to report the crimes Barrett committed. Ex. 2 ¶¶ 2, 4-11. This required investigators to perform substantially more work than they otherwise would have, because many potential witnesses declined to participate or to provide details regarding Barrett. *Id.* ¶ 5. In total, dozens of witnesses expressed fear of retaliation by Barrett. *Id.* To moderate the threat, law enforcement divided the investigation into two phases. The first phase involved speaking with witnesses who were no longer in regular contact with

Barrett. These individuals might feel less threatened by Barrett and might also be less inclined to reveal the details of the investigation to him. *Id.* ¶ 13. In addition to Barrett's threats and other obstacles, this phase was difficult because rock-climbers generally do not live in the same place for extended periods, and the COVID-19 pandemic made it more difficult for investigators to travel extensively to find these itinerant witnesses. *Id.* ¶¶ 12-13. The first phase of the investigation lasted until July 2021 (shortly more than a year following K.G.'s report). By that time investigators had gathered and verified sufficient evidence to interview Barrett and located him (like other members of the community, Barrett had no fixed address and it was difficult to locate him). *Id.* ¶ 14.

The investigation then proceeded to its next phase. This involved checking the information Barrett provided and interviewing witnesses who were in more regular or recent contact with him. *Id.* ¶ 13. Investigators conducted follow-up interviews and the investigation proceeded on several fronts.[3] Notably, investigators interviewed several people who Barrett indicated could be witnesses to his general interactions with K.G. (though not the sexual assault). *Id.* ¶ 14. Law enforcement spoke with these individuals but their information did not match what Barrett claimed. *Id.* ¶ 15. Barrett also claimed in the July 2021 interview that he exchanged messages in which he and K.G. discussed specific sexual acts. *Id.* ¶ 16. But at other portions of the interview he implied there were no such messages; in any event law enforcement found no evidence of sexually-explicit messages despite searching multiple digital devices belonging to Barrett. *Id.* at ¶¶ 16-17.

Approximately one year after Barrett's interview, in August 2022, a grand jury issued the Indictment. Doc. 1.

**B. Argument**

    **1. The Motion to Dismiss Fails to Establish Prejudice**

The Motion to Dismiss fails to establish any prejudice resulting from the delay between Barrett's sexual assaults of K.G. and the grand jury's charges. The Fifth Amendment's Due Process Clause protects against lengthy preindictment delay in certain circumstances. *United States v. Corona-Verbena*,

---

[3] The United States can supply at sidebar or *in camera* at the Court's request additional information regarding aspects of the investigation that may be covered by Federal Rule of Criminal Procedure 6(e).

5

509 F.3d 1105, 1112 (9th Cir. 2007). Protection applies when a defendant can demonstrate prejudice—that is, "actual, non-speculative prejudice"—from the delay. *Id.* (internal citation omitted). This is a "heavy burden" that is "rarely met" and cannot be met with "generalized assertions of the loss of memory, witnesses, or evidence." *Id.* (internal citations omitted). Defendants who do meet that heavy burden have still only completed half of the task; they must next show why the delay, when weighed in the context of the reasons that led to it "offends fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* (internal citations omitted). Courts need not proceed to the second prong where defendants fail to meet the first. As demonstrated below, Barrett meets neither.

The Motion to Dismiss makes two arguments for prejudice, but neither meets his heavy burden. First, Barrett argues that "several witnesses who were present at or around the time of the alleged crime . . . no longer recall any details of the dates in question." Doc. 67 at 10. But the Motion to Dismiss fails to articulate who these witnesses were, what they might have seen, or how the loss of any such evidence prejudices Barrett. It is therefore precisely the kind of "generalized speculation" that "the Ninth Circuit has repeatedly rejected." *See United States v. Rotteveel*, No. CR 2:11-447 WBS, 2014 WL 4244009, at *3 (E.D. Cal. Aug. 26, 2014) (denying motion to dismiss for preindictment delay; finding that defendant's assertion regarding what missing witness might have said was too speculative to establish delay). Barrett's assertion is even less specific than the claim rejected in *Corona-Verbena*. There, Corona-Verbena argued that certain witnesses would have supported his "mere presence" defense but did not explain how they would have supported it or how he was prejudiced by its loss. *Id.*, 509 F.3d at 1113. Barrett's showing is also far less substantial than other unsuccessful claims to prejudice. *See United States v. Barken*, 412 F.3d 1131, 1135 (9th Cir. 2005) (concluding that even where defendant provided affidavit of purported helpful witness, his arguments "did not go beyond mere speculation"); *United States v. Sherlock*, 962 F. 2d 1349, 1354 (9th Cir. 1989) (holding that claimed lapse of witness memory in a sexual assault prosecution did not establish prejudice; defendant did not explain how witness would have testified prior to delay).

Here, the Motion to Dismiss does not even explain how the potential testimony would fit a defense theory. It is not enough to claim that a witness might have seen Barrett and K.G. during the relevant weekend. A sufficient showing of prejudice requires far more. It would also require a far

firmer foundation than Barrett himself could provide, because has attempted to fabricate evidence in his favor in this case. *See* Doc. 50 at 5-7. Barrett's previous claims that witnesses supported his version of events were contradicted by those witnesses. Ex. 2 at ¶ 15. The Court should therefore view with considerable skepticism any argument regarding prejudice based on Barrett's own statements. This in turn undermines any showing of prejudice because a defendant's claims regarding evidence are less likely to establish prejudice when they lack support in the evidentiary record. *United States v. Holmes*, 654 F. App'x 880, 882 (9th Cir. 2016) (upholding denial of motion to dismiss; concluding that the trial court "appropriately differentiated between the evidence in the record and [the defendant's] characterization of that evidence."). The Motion to Dismiss therefore fails to show prejudice regarding purported lost witness testimony.

The Motion to Dismiss also claims that Barrett exchanged "explicit photographs and text messages" with K.G. and that those messages were lost when he changed phones. Doc. 67 at 4, 10. But these allegations are barely more specific than Barrett's claims of missing witnesses. They do not specify the content of the texts or relate the texts to other evidence in the case. And as with the claimed witnesses, there are strong reasons to doubt that the texts ever contained the information he now claims. Barrett talked about the supposed texts in July 2021 but his assertion was equivocal and contradicted at other points, and law enforcement has found no evidence to corroborate that the texts ever existed. Ex. 2 at 16-17.[4] Defendants cannot establish prejudice from records that do not exist, have been manipulated, or do not show what the defendant claims. *See United States v. Carruth*, 699 F.2d 1017, 1019 (9th Cir. 1983) (rejecting claim that missing records established prejudice; defendant had created the records to cover fraudulent transactions and they therefore would not have supported his defense). The purported messages fall into that category. The Motion to Dismiss offers no more than speculation regarding the nature and content of the messages and the Court should accordingly reject claims to prejudice based on the purported messages.

The Motion to Dismiss also fails to show prejudice for the purported messages because it does

---

[4] It is of course notable that K.G. accused Barrett of rape in a text just days after the assault; if Barrett's texts refuted that claim, is seems unlikely that he would have simply allowed them to disappear when he changed phones.

7

not show why they would be admissible or exculpatory.  As the United States' previous motions have shown, evidence that might contain K.G.'s sexually explicit communication is presumptively barred by Federal Rule of Evidence 412 and Barrett's filings on the issue have not established any reason that overcomes the Rule.  Relatedly, even if there had been flirtatious text messages, they would prove very little about what occurred between Barrett and K.G. in Yosemite.  As the Motion to Dismiss notes, K.G. says that Barrett "began to grab K.G. and ripped her shirt." Doc. 67 at 3.  And as the United States has pointed out, K.G. has explained that she was physically resisting Barrett at this time.  Doc. 50 at 2.  The prior text messages—even if Barrett could convincingly demonstrate their content—would shed little light on Barrett and K.G.'s actions during the sexual assault beyond what Rule 412 prohibits: an attempt to show a victim's sexual predisposition.  As with the witnesses, Barrett's claim for prejudice regarding the purported messages fails and the Court should deny the Motion to Dismiss.

**2. The Delay Does Not Offend Fundamental Notions of Fairness**

Even if Barrett could show prejudice, the Court should not dismiss the Indictment.  After a finding of actual prejudice, the next step is to weigh the reasons for the delay against the harm caused by it.  *Corona-Verbena*, 509 F.3d at 1112 (internal citations omitted).  Defendant must show why the delay "offends fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id*.  The showing of harm is even more difficult to meet where the government has not acted for tactical advantage or otherwise acted in bad faith.  *Sherlock,* 962 F.2d at 1354-55; *United States v. Ross*, 123 F.3d 1181, 1186 (9th Cir. 1997).

As an initial matter, of the approximately 72 months between the offense and the Indictment, approximately 44 months (or approximately 61% of the total) represented the period between the offense and K.G.'s report to law enforcement.  K.G. had good reasons for the delay, given her fear that Barrett would harm her and other victims.  K.G.'s fear was well-founded; among other threatening behavior, he threatened to kill another of his victims.  Ex. 2 ¶ 7; Doc. 50 at 8-9.  Delay resulting from a victim's genuine fear of coming forward does not reflect bad faith by the government.  *Story v. State,* 721 P.2d 1020, 1028-29 (Wyo. 1986).  And in any event, delay in victim reporting does not offend notions of fairness or indicate tactical delay by the prosecution.  *Warren v. Smith*, No. 1:09CV1064, 2010 WL 2837001, at *12 (N.D. Ohio Apr. 29, 2010); *Stadler v. Curtin*, 682 F. Supp. 2d 807, 816 (E.D.

8

Mich. 2010); *People v. Shacklett*, No. 215495, 2001 WL 624968, at *3 (Mich. Ct. App. May 25, 2001) (noting that "the delay was attributable to the victim's failure to report the crime to law enforcement authorities. There is nothing in the record to indicate that the delay was in any way attributable to the prosecutor or intended to secure a tactical advantage on the part of the prosecution."); *Com. v. Berry*, 513 A.2d 410, 414 (Pa. Super. Ct. 1986). Delayed reporting is very common in sexual assault cases. *United States v. Kollmar*, No. 19MJ70677MAG1KAW, 2021 WL 179606, at *7 (N.D. Cal. Jan. 19, 2021); Ex. 2 ¶ 9. The delay can frequently stem from the trauma that sexual assault inflicts on its victims. *See Ek-Luna v. Adams*, No. C09-0726 MHP PR, 2010 WL 1927657, at *5 (N.D. Cal. May 12, 2010). None of these factors indicate delay that offends fundamental concerns of justice. Thus, the delay attributable to K.G.'s delayed reporting should weigh against finding a due process violation.

Nor does the remaining time indicate a due process violation, given the difficulty of the investigation. Complex investigations, particularly where defendants caused that complexity, are less likely to be unfair. *Carruth*, 699 F.2d at 1020 (noting that three-and-a-half-year investigation required by defendant's unlawful tax structures did not support due process violation). An investigation's efforts to shore up an older reported crime are also not unfair, despite that they take additional time before the case is charged. *Rosses v. Madden*, No. 17-CV-1898-MMA(WVG), 2019 WL 913172, at *10 (S.D. Cal. Feb. 25, 2019) (noting that investigation into additional criminal conduct to help prove reported crime occurring seven years earlier did not prejudice defendant). Here, investigators were faced with a crime that had occurred several years in the past and involved sexual assaults occurring in isolated locations. They learned of an additional victim early in the investigation, but many potential witnesses were difficult to find and scared to talk about Barrett. The case was therefore exceptionally complex. Ex. 2 ¶ 2. Investigators devised a two-part strategy to resolve the difficulties they faced- by concentrating first on witnesses who might be less subject to Barrett's intimidation, then by interviewing Barrett and other witnesses closer to him. *Id.* ¶ 13. This strategy was very time consuming, based in part on the difficulty in finding witnesses and their reluctance to speak. *Id.* ¶ 5, 13. Because the reasons for delay are understandable and do not implicate core notions of fairness, the Motion to Dismiss fails to establish a Due Process violation and the Court should deny it.

///

### 3. Federal Rule of Criminal Procedure 48(b) is Inapplicable Here

The Motion to Dismiss cites Federal Rule of Criminal Procedure 48(b) as supporting dismissal. Doc. 67 at at 4. It does not. "Rule 48(b) clearly is limited to post-arrest situations." *Corona-Verbena*, 509 F.3d at 1114. The Motion to Dismiss does not argue that any delay since arrest has prejudiced Barrett, nor could it do so—the continuances of various court dates have been at the request of Barrett and his counsel. Doc. 40 at 1-3; Doc. 70 (reflecting continuance of trial date occurring at request of Barrett and defense counsel). Accordingly, Rule 48(b) does not support the Motion to Dismiss and the Court should deny it.

### **CONCLUSION**

The Court should deny the Motion to Dismiss. The Indictment was timely because 18 U.S.C. § 3299 specifies that no limitations period applies to the offenses it charges. The Motion to Dismiss does not offer any reason to believe that Barrett was prejudiced by preindictment delay; even if it did, the reasons for the delay show that no Due Process violation occurred.

Dated: April 27, 2023

PHILLIP A. TALBERT
United States Attorney

*/s/ Michael G. Tierney*
MICHAEL G. TIERNEY
ARIN C. HEINZ
Assistant United States Attorneys