PHILLIP A. TALBERT
United States Attorney
ARIN C. HEINZ
MICHAEL G. TIERNEY
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:22-CR-00213-ADA-BAM |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR BAIL REVIEW |
| v. | |
| CHARLES BARRETT, | HEARING DATE: September 6, 2023<br>TIME: 2:00 p.m.<br>COURT: Hon. Sheila K. Oberto |
| Defendant. | |

On August 25, 2023, defendant Charles Barrett filed a "Notice of Motion and Motion to Release Charles Barrett on a Combination of Factors and/or Conditions," ECF 111 (the "Motion" or "Bail Review Motion"). The Court should deny the Bail Review Motion. The Motion cites no new information since the original detention hearing, but even if it did, it could not overcome the strong evidence that Barrett presents a danger to the community that no combination of conditions can mitigate.

## BACKGROUND

**A. Barrett's History of Sexual Violence**

The Indictment charges Barrett with three counts of sexual assault. ECF 1. The charges involve a weekend in August 2016. Victim K.G. traveled to Yosemite National Park on or about August 13, 2016. Order on Motions in Limine, ECF 85, at 2. They first met with a group of friends, but Barrett led

K.G. into a wooded area alone that night. *Id*. Barrett made aggressive sexual advances on K.G.; she resisted but he pushed her down, strangled her, and violently raped her vaginally and anally. *Id*.

K.G. was fearful of Barrett and remained with him that weekend. Motion in Limine Regarding Other Acts, ECF 50, at 2. The next day, following a hike, K.G. and Barrett swam together in the Tuolumne River. *Id*. In or near the river, Barrett digitally penetrated K.G. without her consent. *Id*. Later that evening, Barrett suggested to K.G. that they shower together in a communal shower facility. *Id*. Barrett vaginally raped K.G. again in the shower facility while she cried out in pain. *Id*.

As part of pretrial motions practice in this case, the District Court has authorized the United States to present evidence pursuant to Federal Rule of Evidence 413 of three other sexual assaults Barrett committed on three other victims. ECF 85 at 10. The first of these involves S.F. In early 2010, S.F. was staying with a friend in Bishop, California. *Id*. at 4. She woke up to Barrett touching her breasts. *Id*. When S.F. attempted to resist, Barrett held her and rubbed his erect penis against her. Barrett ultimately stopped and left the room. *Id*.

The second involves J.V. Barrett slept in J.V.'s house in 2015. J.V. told Barrett that she did not want to have sex, but Barrett held her down and strangled her, then vaginally penetrated her. *Id*. at 5. The next day Barrett admitted to J.V. that he had raped her. *Id*.

The third involves E.B. E.B. and Barrett began a consensual romantic relationship in the fall of 2016, shortly after he sexually assaulted K.G. *Id*. In December 2016, E.B. told Barrett that she was ending the relationship because of his emotional instability, but Barrett threatened to commit suicide and repeatedly came to her residence. *Id*. One night, Barrett held E.B. down until she was unable to move or breathe and vaginally penetrated her, despite her attempts to stop Barrett. *Id*.

**B. Barrett's History of Witness Intimidation, Retaliation, and Obstruction of Justice**

Barrett has a long history of retaliating against those he believes have harmed him. In September 2004, law enforcement rangers in Yosemite arrested Barrett for driving under the influence of alcohol; shortly after the arrest, Barrett slashed the tires on a personal vehicle belonging to one of the law enforcement rangers involved in the arrest. ECF 50 at 10. Barrett later pleaded guilty to a Class A misdemeanor violation of Title 36, Code of Federal Regulations, Section 2.31(a)(3) – Vandalism regarding the incident. ECF 50-10. Barrett committed domestic assault in 2008 by punching a

girlfriend; when an eyewitness refused to falsely present Barrett's version of the assault, Barrett harassed him with phone calls, text messages, and social media posts. ECF 50-1 at 4-5.

Specific to this case, Barret has engaged in repeated behavior to harass and intimidate several of the victims. After sexually assaulting E.B., Barrett returned to E.B.'s residence multiple times and attempted to gain entry, including by breaking in through a window. ECF 50-7 at 2. E.B. called the police but Barrett fled from them; eventually the police sought a restraining order against Barrett on E.B.'s behalf. *Id.*; ECF 50 at 9. Barrett intimidated E.B. into dropping the trespassing charges by telling her that he would "ruin her life" and do "unspeakable" things to her. ECF 50 at 9. Another method Barrett used to harass E.B. was by calling and texting her from a friend's phone; the friend did not know what Barrett was doing with his phone. Ex. 1 at BN 552-55. E.B. later obtained a protective order; Barrett violated it by emailing E.B. and contacting her through Facebook Messenger. Ex. 2 at BN 637.

Barrett also harassed and intimidated S.F. He changed one of his social media profiles to a picture of S.F., and named and publicly posted a climbing route "Fuck you [S.F.]" ECF 50 at 9. In late 2022, Barrett entered a hospital and threatened to kill himself or S.F. *Id.* at 8-9. After making that threat, Barrett pleaded guilty to violating California Penal Code Section 422(a), ECF 50 at 9; per the terms of a plea agreement the charge was dismissed in May 2023.

Barrett harassed and intimidated K.G. by sending her text messages designed to show her he was still aware of her location. ECF 50 at 9. Barrett has several times expressed the belief that K.G. and S.F. are working together against him, and his threats to S.F. therefore extend to K.G. as well. *Id.* at 8.

**C. Barrett's detention as a danger to the community**.

Magistrate Judge McAuliffe held a detention hearing on September 2, 2022. Prior to the detention hearing, the United States Pretrial Services Office issued a report recommending that the Court detain Barrett as a danger to the community (the "PTS Report"). The PTS Report noted that Mr. Richard Newton was willing to serve as a third-party custodian and concluded that he would be suitable should the Court order release. PTS Report at 2. Barrett's father offered to post an equity bond on a piece of real estate in South Dakota with a value he estimated at $45,000. *Id.* at 3. Nevertheless, the PTS Report noted that the nature of the allegations here, Barrett's prior record of violence, substance

abuse, and mental health history, along with a prior violation of the terms of federal pretrial release,[1] directed detention as the appropriate outcome. *Id.* at 6. Following the hearing, Magistrate Judge McAuliffe issued an order detaining Barrett as a danger to the community. ECF 11. The order cited several factors that led to the detention determination, including the nature of the charged offenses, Barrett's history of violence and threats. *Id.* at 2.

### D. Barrett's continued threats and attempts to obstruct justice while in pretrial detention

Despite his pretrial detention, Barrett tried to obstruct justice and threaten victims on recorded jail calls. In October 2022, Barrett again threatened the victims in this case, telling a friend on a recorded call that "something will happen" to the victims, whether "in the courts or not." ECF 81 at 3. The friend warned him not to say things like that, but Barrett continued, saying that he had "people in here" and that he had been "put in here with murderers." *Id.*

Barrett also attempted to fabricate evidence. On recorded calls, Barrett suggested that a friend, M.W., "find" a note purportedly from K.G. that indicated she had had a great weekend in Yosemite. ECF 50 at 5. As the conversation evolved, Barrett made clear that he would be comfortable with a forgery, saying that it did not matter if handwriting showed the note to be from someone other than K.G. because Barrett wanted "something to throw in the works that is hard to prove." *Id.*; ECF 85 at 12-13. (The friend had previously offered to forge K.G.'s signature, ECF 50 at 5).

## ARGUMENT

### A. Barrett cannot reopen the detention hearing because he cites no new information

Barrett has not met the statutory requirement to reopen his detention hearing. The Bail Reform Act allows courts to reopen detention hearings, but only when a defendant puts forth information "that was not known to the movant at the time of the hearing." 18 U.S.C. § 3142(f). That requirement is interpreted strictly. *United States v. Knight*, 452 F. Supp. 3d 938, 945 (D. Nev. 2020). Barrett fails to meet the requirement. The Bail Review Motion suggests the same residence, third party custodian, and the same property as proposed in the original detention proceedings. PTS Report at 2-3; Bail Review Motion at 5. The Bail Review Motion proposes electronic monitoring, and this was considered during

---

[1] Barrett's violation occurred in tire-slashing case. PTS Report at 5.

the original proceedings as well. PTS Report at 2, 5. The Court should not reopen a detention hearing that would only involve the same facts as the prior hearing, and it should therefore deny the Motion.

### B. Barrett remains a continuing danger to the community and should be detained.

Even if the Court were to reopen the hearing, it should deny the Motion because Barrett remains an extraordinarily high danger to the community. He engaged in a pattern of sexual assaults involving at least four victims over approximately six years. He also has a history of physical violence toward women. He has conducted a years-long pattern of intimidating and harassing victims. Acts of witness intimidation represent a danger to the community. *United States v. Zherka*, 592 Fed. App'x 35, 35 (2d Cir. 2015); (noting that obstruction of justice can qualify as a danger to the community"); *United States v. Gamble*, No. CR 19-348 (CKK), 2019 WL 6877755, at *6 (D.D.C. Dec. 17, 2019).

No combination of conditions is sufficient to protect the victims and the community from Barrett's danger. Barrett has attempted to fabricate evidence and threaten witnesses even while in pretrial detention and having been informed that his phone calls are monitored and recorded. ECF 81 at 3; ECF 85 at 12-13. Given that jail has not stopped Barrett's threats, there is no reason to believe that living with just one other person on a nine-acre parcel of land would be any more successful. Significantly, Barrett has demonstrated that he has third parties willing to assist him in obstructing justice. ECF 50 at 5. He has also used unwitting third parties to threaten victims and has used phones and social media to accomplish his intimidate. Ex. 1 at BN 552-55 (detailing Barrett's threatening E.B. with a phone borrowed from an unsuspecting); Doc. 50 at 8-9. Allowing Barrett to contact third parties, without monitoring that contact, presents too great a danger. He should remained confined.

### CONCLUSION

This Court should deny the Bail Review Motion. It provides no new information and because Barrett's threat to the community and victims cannot be ameliorated by conditions of release.

Dated: September 1, 2023

                                        PHILLIP A. TALBERT
                                        United States Attorney

                             By: /s/ Michael G. Tierney
                                  ARIN C. HEINZ
                                  MICHAEL G. TIERNEY
                                  Assistant United States Attorneys