UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  1:22-cr-00213-ADA-BAM-1 |
| Plaintiff, | |
| v. | SECOND ORDER ON MOTIONS IN LIMINE |
| CHARLES BARRETT, | (ECF Nos. 52, 53, 97, 129) |
| Defendant. | |

**I.**

**Factual and Procedural Background**

On August 8, 2023, the Court held a second hearing on motions in limine to address the parties' disputes regarding the admission of certain evidence under Federal Rule of Evidence 412. At the hearing, Arin Heinz and Michael Tierney appeared for the Government.  David Torres and Timothy Hennessey appeared for Defendant.

Because the Court's prior order on motions in limine provided a thorough recitation of the Government's factual allegations, (see ECF No. 85), the Court will not reiterate those facts here, except when necessary for the discussion of a particular motion.

///

///

///

**II.**

**Legal Standard**

In criminal proceedings involving sexual misconduct, Federal Rule of Evidence 412 generally prohibits the admission of an alleged victim's "sexual behavior" or "sexual predisposition." Fed. R. Evid. 412(a). The term "sexual behavior" encompasses both actual and implied conduct as well as "fantasies or dreams." *Id.* 412 advisory committee's note to 1994 amendments. "Sexual predisposition" includes evidence of a victim's "mode of dress, speech, or life-style," and any other "evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder." *Id.* The purpose of Rule 412 is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." *Id.* 412 advisory committee's note to 1994 amendments; *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1104 (9th Cir. 2002). Beyond protecting alleged victims, Rule 412 also safeguards the integrity of the trial process by "keeping irrelevant, prejudicial, and/or inflammatory evidence from the jury." *United States v. Haines*, 918 F.3d 694, 699 (9th Cir. 2019).

Three limited exceptions to this rule permit a court to admit the following evidence:

> (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
>
> (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>
> (C) evidence whose exclusion would violate the defendant's constitutional rights.

*Id.* 412(b)(1). In order to invoke one of these exceptions, the proponent of Rule 412 evidence must specify both the evidence it seeks to introduce and the particular victim at issue. *See United States v. Chang Ru Meng Backman*, 817 F.3d 662, 669–70 (9th Cir. 2016).

The third exception typically involves the Fifth Amendment right to present relevant evidence and the Sixth Amendment right to confront witnesses. Under the Fifth Amendment's

Due Process Clause, courts "may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987).  This right to present relevant testimony, however, "is not without limitation." *Id.* Rather, "[t]he right, 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'"  *Id.* (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). Protecting rape victims against harassment and invasions of privacy is just such a legitimate interest.  *Wood v. State of Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) (citing *Michigan v. Lucas*, 500 U.S. 145, 149–50 (1991)).

A criminal defendant also has a Sixth Amendment right "to be confronted with the witnesses against him."  U.S. Const., amend. VI.  This right ensures a defendant's ability to cross-examine witnesses and impeach their credibility.  *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  To determine whether the exclusion of certain evidence would violate the Sixth Amendment, courts first determine whether the evidence is relevant.  *Wood*, 957 F.2d at 1550.  If it is, courts next consider whether the legitimate interests for exclusion outweigh the probative value of the evidence.  *Id.*

## III.

### Discussion

### A.       Photographs of K.G.[1]

Defendant seeks to admit testimony that K.G. maintained a website "dedicated to erotic photos" and that, at the time of the incident, her phone contained " 'non-artistic' amateur erotic photos" showing her bound and topless as well as photographs of marks on her body that she

---

[1] On March 22, 2023, the Government preemptively filed a motion to exclude certain evidence, including nude photographs of E.B., under Rule 412.  (ECF No. 52 at 7–8.)  Nowhere in his Rule 412 briefing does Defendant mention any photographs of E.B.  Nor did any party mention those photographs at the hearing.  Because Defendant would bear the burden of demonstrating the admissibility of such photographs, they remain presumptively inadmissible under Rule 412 and the Court need not address the Government's argument.

received "after engaging in rough and violent sex." (ECF No. 97 at 6.) He claims that he viewed these photographs on K.G.'s phone prior to the incident at issue in this case. (*Id.*)

### 1. Defendant has described the photographs with sufficient specificity and proffered sufficient evidence that K.G. showed them to him.

The Government has argued on multiple occasions that the Court should exclude the photographs because Defendant has failed to present evidence that K.G. showed them to him and because he has failed to describe the photographs with sufficient specificity. (ECF No. 52 at 10–11; ECF No. 73 at 7–8; ECF No. 105 at 6 n.6.) This argument is not persuasive. First, at the hearing, defense counsel clarified that Defendant claims both to have received text messages containing the photographs and looked at the photographs on K.G.'s own phone prior to the incident. This accords with Defendant's written position that he "received and/or was shown erotic photos." (ECF No. 97 at 6.) Additionally, Defendant has provided evidence of the existence of the photographs beyond his mere memory. He attached a declaration to his August 1, 2023 Rule 412 motion asserting that a cell phone analyst discovered several erotic photographs that were on K.G.'s phone at the time of the incident, some of which she had taken only days before. (ECF No. 97 at 11.) Notably, the Government does not dispute the existence of these photographs. The Court, therefore, finds that Defendant's proffer is sufficient for a reasonable jury to find, by a preponderance of the evidence, that K.G. showed the photographs to Defendant. *See* Fed. R. Evid. 104(b); *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

Second, Defendant has asserted the existence of specific photographs that K.G. had on her phone at the time she interacted with Defendant prior to the incident. (ECF No. 97 at 11.) He also asserts that the Government has access to all of these photographs. (*Id.* ("The government can easily verify [the existence of the photographs] as they still have the phone [that contains them].").) Defendant prudently declined to provide copies of the photographs to the Court in an effort "to preserve as much privacy as possible." (*Id.*) This decision not to provide the specific photographs does not mean, however, that his proffer lacks sufficient specificity. He has described the general nature of the photographs, (*Id.* at 6), and, because the Government has access to them, the Court need not be concerned that Defendant's descriptions are the product of

4

his imagination or an imprecise memory.  A comparison to *United States v. Chang Ru Meng Backman*, 817 F.3d 662 (9th Cir. 2016) is apt.  (*See* ECF No. 52 at 11.)  There, the defendant, charged with sex trafficking, sought to introduce "evidence of the alleged victims' sexual conduct after the indictment period."  *Id.* at 668 (internal quotations omitted).  An attached declaration stated that "these sexual commercial activities also occurred immediately after [the victims] first left Defendant's premises on March, 2009, and as described by [a named witness] in his deposition dated March 6, 2013."  *Id.* at 669 (internal quotations omitted).  That deposition discussed events spanning a period of many months and did not mention the names of any specific victims.  *Id.*  The Ninth Circuit concluded that the district court's decision to exclude this evidence was not an abuse of discretion because the defendant had failed to specify the "precise evidence" or the "particular victim at issue."  *Id.* at 670.  In contrast to *Chang Ru Meng Backman*, here there is no dispute about the identity of the individual in the photographs – K.G. – the content of the photographs, or the dates on which they existed in K.G.'s phone.  Because all parties have an opportunity to view the photographs and to confirm these details, the Court concludes that Defendant has provided sufficient specificity to seek admission of the photographs under Rule 412(b)(1)(B) and (C).

> **2.**      **The photographs do not support a finding that K.G. lied to law enforcement and using the photographs to impeach K.G.'s general credibility is improper.**

Defendant contends that he should be able to impeach K.G. with evidence of these photographs because she previously told law enforcement that "the only binding photos she ever took were of the traditional Japanese binding Shibari."  (ECF No. 97 at 6.)  This refers to an interview K.G. gave to law enforcement in July 2021 about the incident.  In that interview, the officer told K.G. that Defendant described seeing "artsy" photographs online of her nude and in bondage.  (ECF No. 97 at 214.)  K.G. replied that she did not remember posting such photographs, but that Defendant may have been referring to one that K.G. took while attending a Shibari rope bondage class.  (*Id.*)  Contrary to Defendant's assertions, however, K.G. did not tell the interviewing officer that she had never taken other "binding photos."  (*See id.* at 6.)  Impeachment of her statement to the officer is, therefore, unnecessary because it is not

inconsistent with the existence of other photographs.  Similarly, the mere fact that she expressed uncertainty about the year she took the photograph and whether she ever posted it is not inconsistent with the existence of other photographs of her.  Even if Defendant had made a showing that K.G.'s statements to the interviewing officer were inconsistent or untrue, such a showing would only demonstrate minor inconsistencies with little probative value that would only impeach K.G.'s general credibility.  The Confrontation Clause does not require such an inquiry.  *See United States v. Payne*, 944 F.2d 1458, 1469 (9th Cir. 1991) (citing *Hughes v. Raines*, 641 F.2d 790, 793 (9th Cir. 1981)) (holding that excluding cross-examination of minor inconsistencies concerning unrelated incidents does not violate the Confrontation Clause, "where its purpose is to attack the general credibility of the witness").

      **3.**      **The fact that K.G. showed the photographs to Defendant is relevant to Defendant's consent defense.**

Alluding to the consent exception under Rule 412(b)(1)(B), Defendant also argues that seeing these photographs gave him a reasonable impression that K.G. expected to engage in rough sex with him.  (ECF No. 97 at 6.)  The Government cites to *Wood v. State of Alaska*, 957 F.2d 1544 (9th Cir. 1992) for the proposition that there is no logical connection between seeing erotic photographs and consent.  (ECF No. 105 at 6.)  Its analysis of *Wood*, however, somewhat mischaracterizes the Ninth Circuit's analysis in that case.

The defendant in *Wood* faced rape charges and testified at a pre-trial hearing that the victim told him about her experience posing nude for *Penthouse* magazine, acting in pornographic films, and participating in live sex shows.  *Id.* at 1546–47.  He claimed that she also showed him the *Penthouse* photographs, which he perceived to be a sexual advance.  *Id.*  The victim claimed that she and the defendant had a platonic relationship, and the defendant wanted to admit this evidence to prove that their relationship was sexual.  *Id.*  Unconvinced of a logical connection between the proffered evidence and the issue of consent, the state trial court excluded all evidence of the *Penthouse* photographs and the victim's pornographic acting.  *Id.*  On habeas corpus review, the Ninth Circuit rejected out of hand the defendant's argument that evidence of the victim's photographs and acting was relevant to show that she was "a woman of questionable

sexual morals." *Id.* at 1550. Moreover, the evidence was not relevant to the question of whether the victim was willing to have sex at all because she never expressed an aversion to having sex. *Id.* While the evidence of the victim's modeling and acting was "irrelevant in itself," however, her communications with the defendant about those experiences was relevant to whether she and the defendant had a sexual relationship and could "shed considerable light on her attitude toward having sex with him." *Id.* at 1551. The fact that such evidence was not dispositive of the issue of consent did not render it irrelevant. *Id.*

Here, Defendant does not proffer photographs of K.G. to advance a theory that she is a person of "questionable sexual morals." Rather, he claims that the fact K.G. showed him those photographs makes it more probable that she agreed not only to have sex with him, but to have "rough sex." (*See* ECF No. 97 at 6.) This is exactly the type of reasoning the Ninth Circuit approved in *Wood*.

### 4. The probative value of the photographs outweighs the legitimate interests in excluding them.

Because the photographs of K.G. are relevant, the Court must next consider whether legitimate interests outweigh their probative value. *See Wood*, 957 F.2d at 1551. A further discussion of the Ninth Circuit's interest balancing in *Wood* is instructive. There, the court held that the public nature of the victim's acting and photographs lessened the traditional interests upholding rape shield laws – protecting the privacy of individuals and encouraging reporting of sexual assaults by avoiding embarrassing trial inquiries into past sexual conduct. *Id.* at 1552. Nevertheless, the Ninth Circuit recognized significant prejudice stemming from the fact that the proposed evidence would have necessarily introduced evidence of the victim having sex with others, which could lead the jury to base its decision on evidence not relevant in itself. *Id.* Similarly, such evidence could have caused the jury to be hostile to the victim and conclude she was an immoral woman who deserved to be raped. *Id.* at 1552–53. The court balanced this substantial risk of prejudice against the limited probative value of the defendant's proposed evidence. *Id.* at 1553. Specifically, testimony at the trial revealed that the victim showed her *Penthouse* photographs to others, including in the presence of the defendant, indicating that she

1    simply wanted to "show off her modeling experience." *Id.* at 1553. When asked if he thought

2    showing the photographs was a "come-on," the defendant replied, "Slightly, I wouldn't say

3    totally, no." *Id.* Additionally, the defendant was able to present other evidence of his sexual

4    relationship with the victim, including testimony from third-party witnesses. *Id.*

5            The risk of prejudice and the probative value of the proposed evidence in this case are

6    both greater than in *Wood*. First, unlike the victim in *Wood*, K.G. is a private individual who took

7    private photographs of herself. To the extent that Defendant claims K.G. waived her right to

8    privacy by posting the Shibari bondage photograph online, the Court does not find that a single

9    photograph transformed K.G. into the type of public figure at issue in *Wood*. Similarly, the Court

10   does not have enough information about the nature of K.G.'s website "dedicated to erotic photos"

11   to find that her maintenance of it turned her into a public figure. The private nature of K.G.'s

12   photographs also reinforces the fact that their introduction would lead to the type of embarrassing

13   trial inquiries Rule 412 seeks to avoid. Second, the same risks of confusing the jury and

14   engendering hostility against the victim in *Wood* exist in this case. Specifically, Defendant has

15   proffered that some of the photographs he saw showed injuries that K.G. received from having

16   rough sex with other people. Introduction of such evidence, which is not relevant in itself, could

17   confuse the jury. Additionally, the nature of the photographs could be inflammatory to jury

18   members not familiar with consensual bondage and "rough" sex. To mitigate the significant

19   prejudicial effect of the photographs, Defendant has proposed to admit only testimony about the

20   photographs, not the photographs themselves. (ECF No. 97 at 6.)

21           On the other side of the equation, the probative value of the photographs in this case is far

22   greater than in *Wood*. Unlike the victim in *Wood*, there is no indication that K.G. shared these

23   photographs with others, either in Defendant's presence or outside of it. Defendant also does not

24   demur, as did the defendant in *Wood*, about the erotic nature of the photographs. He contends

25   that seeing the photographs directly indicated K.G.'s desire to have rough sex with him. Most

26   importantly, unlike the parties in *Wood*, Defendant and K.G. did not have a substantial history

27   with each other. There are likely no third-party witnesses who can testify to a sexual relationship

28   between the two of them, much less a relationship that involved rough sex. In fact, it appears that

8

Defendant and K.G. are the only two people who can testify to the nature of their relationship. Though it is a close call, the Court concludes that prohibiting Defendant from questioning K.G. about any photographs she showed him would violate his right to confront her.

Accordingly, the Court **GRANTS** Defendant's request to question K.G. about the photographs Defendant claims she showed him. This includes questioning K.G. about the timing of when she showed the photographs to Defendant, questioning her about her method of sharing them with Defendant, and eliciting from her verbal descriptions of the nature of the photographs. In accordance with Defendant's suggestion, the Court will not permit him to introduce actual photographs into evidence.

**B.     K.G.'s and S.F.'s prior sexual assault allegations against third parties**

      **1.     Defendant has presented no evidence that K.G.'s prior assault accusations were false.**

Defendant seeks to admit evidence that K.G. has previously accused two other individuals of raping her in 2014. (ECF No. 97 at 7–8.) The first incident occurred at an August 2014 birthday party, where K.G. had sex with the host after which she told him that "she did not like him and only had sex with him to leave her alone." (ECF No. 97 at 7, 214.) When asked to describe the incident during an interview with law enforcement in 2021, K.G. claimed that "it could be considered rape." (*Id.* at 213.) She also explained that she drank enough alcohol at the party that it hindered her memory of the evening. (*Id.* at 214.) The second incident occurred on New Year's Eve in 2014, when K.G. texted a friend, "I think I just got raped" in public while on a date. (*Id.* at 8, 67–69.) During the text conversation, K.G. states she is a "lightweight," which Defendant interprets as an admission that she was intoxicated during the incident. (*Id.* at 8, 68.) Defendant notes that K.G. did not report either assault to law enforcement. (*Id.* at 7–8.) He argues that cross-examination of K.G. about both incidents is necessary because they demonstrate a pattern of K.G. drinking too much, having sex, regretting the sexual encounter, and later labeling the encounter as rape. (*Id.*)

The fact that a sexual assault victim has previously accused others of assault is only relevant insofar as "it [can] be shown convincingly that the other charge was false." *Hughes*, 641

F.2d at 792.  Even if a defendant can show that a prior assault allegation against a third party was false, the admissibility of that accusation depends on its similarity to the facts of the charged assault.  *Id.* at 793 (citing Fed. R. Evid. 404(b)).  Admitting such evidence as an attack on a witness's general credibility is prohibited.  *Id.*; *see also United States v. Bartlett*, 856 F.2d 1071, 1089 (8th Cir. 1988).[2]

Defendant has made no showing that K.G.'s prior accusations were false.  The fact that K.G. never reported the incidents to law enforcement is meaningless.  *See United States v. Crow Eagle*, 705 F.3d 325, 329 (8th Cir. 2013) (finding no evidence of falsity where defendant relied entirely "on the long time span between the alleged assaults and reports, as well as the lack of prosecution").  Additionally, Defendant has provided no extrinsic evidence that K.G.'s accusations were false or pointed to anything in K.G.'s text messages or prior statements indicating as such.  *Cf. Redmond v. Kingston*, 240 F.3d 590, 591 (7th Cir. 2001) (holding that defendant convincingly demonstrated the falsity of a prior accusation through the victim's recantation, thirty police reports investigating the incident, and the district attorney's institution of contempt charges against the victim).  Permitting Defendant to cross examine K.G. about these accusations would do nothing but waste time, confuse the jury, and needlessly embarrass K.G. *See* Fed. R. Evid. 403.

Accordingly, Defendant's request to cross-examine K.G. about the circumstances surrounding her two prior rape accusations – from August and December 2014 – is **DENIED**.

> **2.      Defendant has not demonstrated the relevance of S.F.'s 1987 assault allegation against a third party.**

In a 2021 interview with law enforcement about the time Defendant allegedly assaulted her in 2010, S.F. described a similar prior sexual assault that she endured in college in 1987. (ECF No. 97 at 224.)  Like the 2010 assault, the 1987 assault involved S.F. waking up in bed at a

---

[2] The Court notes that "there is a question whether Rule 412 reaches the use of a prior false accusation of rape for impeachment purposes."  *United States v. Bartlett*, 865 F.2d 1071, 1088 (8th Cir. 1988); *see also Boggs v. Collins*, 226 F.3d 728, 744 (6th Cir. 2000) (affirming exclusion of false accusation testimony based on longstanding prohibitions against propensity evidence under Fed. R. Evid. 404(b) and 608(b)); *but see United States v. Withorn*, 204 F.3d 790, 795 (8th Cir. 2000) (affirming district court ruling to exclude prior sexual assault accusations under Rule 412).  Because, Defendant has failed to present any evidence regarding the falsity of K.G.'s prior accusations, the Court need not address this question.

1   friend's apartment with a stranger trying to have sex with her.  (*Id.*)  Unlike with K.G.'s

2   accusations of prior assaults, Defendant does not allege that S.F. fabricated the 1987 assault.  (*Id.*

3   at 9.)  To the contrary, he asserts that an expert would opine that the similarities between the two

4   incidents, and the fact that nobody was held accountable for the 1987 assault, indicate that S.F.'s

5   "memory has imprinted the unresolved trauma from the college event with the far less egregious

6   encounter" with Defendant.  (*Id.*)  Defendant provides no case law or other authority to support

7   this theory of admissibility.  He mentions the possibility of expert testimony but does not identify

8   an expert, provide the expert's qualifications, or illuminate the Court about the basis for such an

9   expert opinion.  *See* Fed. R. Evid. 702–703.  Moreover, as the Government points out, there is no

10  reason to believe that S.F. has confused two incidents that occurred decades apart, took place in

11  different locations, and involved different individuals.  (ECF No. 105 at 8.)

12          Defendant's theory of admissibility is based on pure speculation and untethered from any

13  case law.  Permitting him to cross examine S.F. about the 1987 assault would do nothing but

14  mislead the jury, confuse the issues, and needlessly embarrass S.F.  *See* Fed. R. Evid. 403.

15  Accordingly, Defendant's motion to cross-examine S.F. about her 1987 assault is **DENIED**.

16  **C.**      **Text messages between K.G. and third parties**

17          The Government has consistently asserted that Defendant has not provided evidence of

18  sexually explicit text messages between K.G. and Defendant.  (*See* ECF No. 58 at 3–4.)  Indeed,

19  Defendant has not presented any such messages to the Court.  Accordingly, any sexually explicit

20  messages between Defendant and K.G. remain presumptively inadmissible.  *See* Fed. R. Evid.

21  412(a).

22          **1.**      **Messages about rough sex and "rape play"**

23          Defendant seeks to admit evidence of sexually explicit text message conversations

24  involving discussions of rough sex and "rape play."  (ECF No. 97 at 4–5.)  Given the violent and

25  degrading nature of the allegations against him, Defendant fears that a jury will assume that his

26  actions were inherently assaultive and fail to credit any argument that someone could consent to

27  such conduct.  (*Id.* at 4.)  Only if the jury has a picture of K.G.'s preferences for rough sex and

28  "rape play," he argues, will it be in a position to understand Defendant's consent defense.  (*Id.*)

Defendant's argument is similar to the one he makes seeking admission of the photographs on K.G.'s phone. (*See*, infra, III.A.) Unlike with the photographs, however, Defendant has proffered no evidence that K.G. showed him these text messages or discussed their contents with him. Nor has he proffered any other specific evidence that K.G. related her desire for rough sex or "rape play" in conversations with him beyond showing him photographs on her phone. As discussed above, the content of K.G.'s conversations with third parties "is irrelevant in itself." *Wood*, 957 F.2d at 1551. The question for the jury is whether K.G. consented to sex, in whatever form, with Defendant. Whether she discussed, or consented to, rough sex with others "only goes to show a generalized attitude toward sex that says little if anything about [her] attitude toward sex with [D]efendant." *Id.* Admission of such evidence, therefore, "would serve no purpose other than to play on social prejudices surrounding sexual activity and to 'infus[e] sexual innuendo into the factfinding process.'" *United States v. Perez*, 662 Fed. App'x 495, 496 (9th Cir. 2016).[3]

Accordingly, the Court **DENIES** Defendant's request to admit evidence of K.G.'s discussions with third parties about her preferences for rough sex and "rape play."

**2.      Messages about bringing Defendant to a "BDSM sex party"**

Defendant also seeks to admit evidence of a text message K.G. sent to a friend several months after the incident at issue in this case joking about inviting Defendant to a "BDSM sex party." (ECF No. 129 at 2.) As the Government points out, however, Defense Counsel mischaracterizes the nature of this text exchange, cherry picking two text messages out of a larger conversation to make it appear that the conversation revolved around the BDSM party. (ECF No. 135 at 3–4.) The actual conversation played out as follows:

> D.K.:[4] Ha thanks I appreciate that! I'm pretty proud of my awkwardness.. That and my thorough knowledge of Chuck Norris jokes!
>
> K.G.: Yeah not so sure about the latter… but the former's pretty

---

[3] This citation to an unpublished Ninth Circuit opinion for its persuasive value is proper pursuant to Federal Rule of Appellate Procedure 32.1 and Ninth Circuit Rule 36-3.

[4] The Government's exhibit identifies the third-party with the initials of D.K. (ECF No. 136.) The Court does not know the actual identity of this individual, and it is not relevant for purposes of this motion.

adorable sometimes.  Lmk if you want to watch cliffhanger sometime your pitch of it was pretty intriguing

D.K.:  Oh my god we completely have to get high and watch cliffhanger!  I've rarely been so excited for something

D.K.:  Tomorrow or Friday?

D.K.:  It's so 80s tastic with undertones of extreme rock climbing

**K.G.:  Ha yeah tomorrow works cause I have a bdsm play party to make an appearance at Friday**

D.K.:  Sweet I'll invite a tinder date.. Kidding... Tinder is the worst.. But it's like cigarettes for me... Compulsive behavior

**K.G.:  Ha as long as I can invite Charlie barett you can invite ms. judgmental hippie.**

K.G.:  I got the weed hookup btw if you provide a piece or can roll because my bong and pipe are back in CO

D.K.:  Hahah better to be creeped on by a friend than a stranger.. Wait that's entirely untrue

(ECF No. 136 (emphasis added to indicate the two text messages that Defendant provided to the Court).)  It is clear to the Court from the full conversation that K.G. is joking about inviting Defendant to view a movie titled Cliffhanger, not to attend a BDSM party.  The way Defense Counsel portrayed these text messages in their briefing and exhibits – removing them entirely from their context within a larger conversation – is concerning because it indicates a recognition of their non-sexual nature.

Accordingly, to the extent Defendant wishes to admit evidence of K.G.'s text message to a third-party discussing a "bdsm play party," that motion is **DENIED** for the same reasons discussed above with reference to K.G.'s texts about rough sex and "rape play."  *See Wood*, 957 F.2d at 1551.

As the Government recognizes, however, because the conversation about Defendant is non-sexual, it would fall outside the ambit of Rule 412.  (ECF No. 135 at 4 n.3.)  Indeed, by redacting the words "bdsm play," presenting this conversation to a jury would not implicate Rule 412.  Nevertheless, the Government, in conclusory fashion, argues that the conversation remains inadmissible under Rules 401 and 403.  (*Id.*)  The Court disagrees.  Defendant asserts that part of

13

1    his defense is K.G.'s ongoing reinvention of the incident between her and Defendant.  (*See* ECF

2    No. 129 at 2.)  His consent defense also appears to rely on assessments of body language and

3    unspoken agreements rather than direct verbal consent.  Accordingly, evidence of K.G.'s

4    perception of the incident, as revealed through later conversations with others, is relevant to that

5    defense.  For example, a jury might conclude that joking about inviting Defendant as a date to a

6    movie and discussing him in the same context as a "judgmental hippie" downplays, to some

7    degree, K.G.'s perception of the egregiousness of Defendant's alleged conduct during the incident

8    in question.  Moreover, the Court does not believe that permitting Defendant to present this

9    conversation will prejudice K.G., mislead the jury, confuse the issues, or waste time, particularly

10   if the Court redacts the words "bdsm play."  Presumably, the Government will argue that K.G.'s

11   joking manner is a coping method that is not indicative of her state of mind at the time of the

12   incident.  The fact that the parties can interpret the messages differently, however, does not mean

13   that the introduction of those messages is prejudicial or irrelevant.

14           Accordingly, to the extent Defendant seeks to introduce the text message conversation

15   between D.K. and K.G. for the purpose of proving K.G.'s state of mind during the incident

16   between her and Defendant, the motion is **GRANTED**.  If Defendant does introduce this

17   conversation into evidence, he shall redact the words "bdsm play" prior to showing it to the jury.

18   **D.       Evidence of K.G. going on a date after the incident**

19           Defendant seeks to introduce evidence that, on K.G.'s drive home after the alleged

20   assaults, she asked another person out on a date and texted a friend when that person agreed.

21   (ECF No. 129 at 2.)  He claims that such behavior is inconsistent with someone who had just

22   been raped multiple times over the course of several days.  (*Id.* at 2–3.)  The Government agrees

23   that this evidence is admissible for the purpose of asking "whether a person who had endured

24   sexual assault would ask another person on a date or in general express happiness and excitement

25   after that assault."  (ECF No. 135 at 2.)  The Court agrees that introducing this evidence for the

26   purpose the Government highlights would not violate Rule 412.  *See United States v. Woody*, 336

27   F.R.D. 293, 344 (D.N.M. 2020) (recognizing that "a dating relationship is not necessarily equated

28   with a sexual relationship").

1    Accordingly, Defendant's motion to admit evidence of K.G. asking someone on a date

2    shortly after the incident between her and Defendant is **GRANTED**.

3    **E.    K.G.'s nonbinary gender identity**

4    The Government moves for the Court to exclude any mention of K.G.'s nonbinary gender

5    identity.  At the August 8, 2023 hearing, Defendant did not object to the Government's motion.

6    Accordingly, the Government's motion to exclude mention of K.G.'s nonbinary gender

7    identity is **GRANTED**.

8    **F.    Evidence of K.G.'s STI testing**

9    The Government has noted its intent to introduce evidence that K.G. sought testing for

10   sexually transmitted infections ("STI") following the incident with Defendant.  (ECF No. 135 at

11   6.)  The purpose of this evidence would be to show that "it is not uncommon for sexual assault

12   victims to seek limited medical review (such as STI testing) and not a full forensic examination."

13   (*Id.*)  This would serve to rebut any argument about the fact that K.G. did not report the assault to

14   law enforcement immediately.  (*Id.*)  If the Government does introduce such evidence, Defendant

15   requests that he be able to cross examine K.G. about the fact that she suffered from a STI prior to

16   meeting Defendant.  (ECF No. 129 at 4.)  Defendant believes that such an inquiry would be

17   necessary to show that K.G.'s testing "could have just been part of routine treatment" rather than

18   a reaction to a rape.  (*Id.*)  Ultimately, Defendant prefers that the Court exclude all evidence of

19   K.G.'s STI testing.  (*Id.*)

20   The Court agrees with Defendant and will exclude all mention of K.G.'s STI testing.

21   Permitting Defendant to question K.G. about her STI history would likely run afoul of Rule 412

22   and would certainly be prejudicial and embarrassing to K.G.  The Government's theory of

23   admissibility elevates K.G.'s STI testing into a form of sexual assault reporting that is not obvious

24   based on the mere fact of testing.  Rather, the fact of K.G.'s testing alone is of limited probative

25   value.  It could be the case that K.G. undergoes STI testing every time she has sex with a new

26   partner.  Or she could undergo testing only when she has unprotected sex with another.  Maybe

27   she undergoes STI testing at regular intervals, and this test happened to fall near the incident with

28   Defendant.  The Court does not know the answers to these questions but allowing the

1  Government to present the fact of a single STI test while prohibiting Defendant from questioning

2  K.G. about whether that test fit into a pattern of regular STI testing would unfairly prejudice

3  Defendant.  *See* Fed. R. Evid. 403.

4       Accordingly, Defendant's motion to exclude evidence of K.G.'s post-incident STI and the

5  Government's motion to exclude evidence of K.G.'s prior STI diagnosis are **GRANTED**.

6  **G.    K.G.'s viewpoint on what constitutes rape**

7       Defendant seeks to introduce evidence regarding K.G.'s viewpoint on what constitutes

8  rape or sexual assault.  (ECF No. 129 at 3.)  This evidence includes a social media post from a

9  third party that K.G. "liked" and a text conversation between K.G. and a third party in which she

10  explains that "in the past it's been difficult for [her] to speak up when [she] feel[s]

11  uncomfortable."[5]  (ECF No. 129 at 49, 53.)  To the extent that this evidence constitutes K.G.'s

12  own interpretation of what qualifies as rape it is wholly irrelevant.  It is the Court's responsibility,

13  not K.G.'s or Defendant's, to define the law for the jurors in this case.  *See Boyde v. California*,

14  494 U.S. 370, 384 (1990) (holding that jury instructions "are viewed as definitive and binding

15  statements of law").  Moreover, neither of Defendant's proffered pieces of evidence implicate the

16  incident between K.G. and Defendant in a way that could shed light on K.G.'s state of mind

17  during that incident.  The Court agrees with the Government that introduction of this evidence has

18  little, if any, probative value and would serve only to confuse the jury.

19       Accordingly, Defendant's motion to admit evidence of K.G.'s viewpoint on what

20  constitutes rape or sexual assault is **DENIED**.

21  **H.    K.G.'s mental health diagnoses and use of medication**

22       Defendant seeks to introduce evidence that K.G. takes medication to treat a bipolar

23  disorder diagnosis.  (ECF No. 97 at 9–10.)  This request has been the subject of extensive briefing

24  between the parties.  (*See* ECF Nos. 103, 107, 130, 141.)  In fact, the Court has already issued a

25  separate order denying Defendant's request to compel psychiatric records from K.G.  (ECF No.

26  ---

[5] Defendant refers to the "liked" post as "a list of potential paper topics" that K.G. composed.  (ECF No. 129 at 3.)
27  The Court does not see how this is a plausible interpretation of the social media post he proffers as Exhibit F.  (*See id.* at 49.)  Specifically, there is no indication that K.G. is the one who created the post.  Moreover, nothing in the
28  body of the post indicates that it is a list of "paper topics."  To the extent that Defendant is referring to another piece of evidence, he has failed to present it to the Court.

142.)  That order noted the possibility of Defendant filing a subpoena pursuant to Federal Rule of Criminal Procedure 17(c) for the records in question.  At a status hearing on November 13, 2023, the parties informed the Court that Defendant intended to file such a subpoena and that the parties had agreed to stipulate to a process for the in-camera review of any records that K.G.'s medical providers might produce.  This process will likely yield substantial future briefing on this issue.

Accordingly, the Court concludes that it is premature to rule on Defendant's motion.

IT IS SO ORDERED.

Dated:   November 13, 2023

UNITED STATES DISTRICT JUDGE

17