PHILLIP A. TALBERT
United States Attorney
ARIN C. HEINZ
MICHAEL G. TIERNEY
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                v.<br><br>CHARLES BARRETT,<br><br>                              Defendant. | CASE NO. 1:22-CR-213-JAM-BAM<br><br>UNITED STATES' SENTENCING MEMORANDUM |

The United States submits this sentencing memorandum in support of its request for the Court to sentence defendant Charles Barrett to life in prison. A sentence of life imposes just punishment for Barrett's violent sexual assaults in this case and takes into account Barrett's long history of violence towards women, his serial sexual predation of female rock climbers who admired him, his obstruction of justice, and his failure to accept responsibility. Barrett has demonstrated he cannot be rehabilitated or deterred, thus making him a danger to society – and to his victims – for the rest of his life. Accordingly, the United States requests that this Court confine Barrett for the remainder of his life. Only a life sentence can protect the community from Barrett's demonstrated potential for sexual violence.

**II. BARRETT'S REPEATED SEXUAL ASSAULTS AND OBSTRUCTION OF JUSTICE**

**A. Barrett's rapes, sexual assaults, and intimidation of K.G.**

On February 13, 2024, a jury found Barrett guilty of two counts of Aggravated Sexual Abuse on K.G. and one count of Abusive Sexual Contact on K.G. Dkt. 239 (Verdict Form). Having presided over

1

the trial, the Court is familiar with the facts. Accordingly, the Government summarizes only those facts that are key to the sentencing enhancements at issue.

On August 13, 2016, after isolating 19-year-old K.G. alone in the woods, Barrett forcibly raped her vaginally and anally (Count One). PSR ¶ 13-14. While he raped her, he strangled her to the point that she feared death. *Id*. The rape was "very, very forceful and aggressive in a way that hurt." *Id*. After the rape, K.G.'s strategy was to "get to Monday as unscathed as possible." PSR ¶15. The next day, K.G. was sore and had bruises on her body. PSR ¶18. Despite this, and in spite of K.G.'s resistance – Barrett sexually assaulted K.G. again on August 14, 2016, by digitally penetrating her vagina in a "rough way that hurt." *Id*. Later that same day, Barrett forcibly raped K.G. in a shower both vaginally and anally. Barrett's final rape of her was "painful, stinging and rough." PSR ¶19. K.G. was able to safely leave Barrett on Monday afternoon and return to her parent's home.

After K.G. returned home, she confronted Barrett over text about raping her. Barrett responded that she "liked it." PSR ¶21. Over the course of the remaining years Barrett took steps to intimidate and silence K.G.: he texted her in 2019 to ensure that she knew he was aware of her whereabouts; he interfered with her ability to get a job; he accused her then boyfriend of slashing his tires (a claim for which he provided no evidence); and K.G. received random hang up phone calls from burner numbers. PSR ¶23. Barrett also posted publicly on his social media, comparing himself to Johnny Depp and threatening K.G. and S.F. with lawsuits. PSR ¶25.

**B.  Barrett's Sexual Assaults on S.F., J.V., and E.B.**

Three other victims testified to assaults that Barrett committed on them pursuant to FRE 413. Dkt. 85. In March 2010 Barrett assaulted S.F. by rubbing her genitalia with his hand while she was sleeping at a friend's house in March of 2010. PSR ¶75. When she rejected him, Barrett called her a "cunt." *Id*. Thereafter, for several years, Barrett harassed S.F. online, including threatening her directly and through third parties. PSR ¶77-78. On January 5, 2022, Barrett walked into the Emergency Room at Mammoth Hospital making threats to kill S.F. because she had purportedly "ruined his life." PSR ¶79; *see also* Dkt. 227 (Stipulation of Expected Testimony of Dr. Vargas).  These threats caused medical staff at the hospital to call police—resulting in a later conviction for the threats.

In January 2015 Barrett strangled and raped J.V. on the first night she met him. PSR ¶82. While

2

he strangled her, J.V. feared for her life. *Id*. She thought "if I stop breathing and die someone will find out…I remember getting to the point, thinking, if he kills me this is it." *Id*. The next morning Barrett admitted to J.V. "I know I raped you." *Id*. Finally, Barrett sexually assaulted E.B. in late December 2016. PSR ¶ 89. Barrett also trespassed at her residence, called her repeatedly and threatened her when she sought a protective order against him.

### C. Barrett's Continued Obstruction of Justice and Failure to Accept Responsibility

To date, Barrett has refused to accept responsibility for his crimes. PSR ¶ 42-44. Barrett gave a statement to law enforcement where he denied the allegations and accused K.G. of not being "sane." PSR ¶ 26. Barrett also claimed that K.G. and S.F. teamed up to "ruin his life." PSR ¶ 28. Instead of expressing remorse or regret, Barrett refers to his wrongdoing as a series of "'weird' scenarios that did not work in his favor." PSR ¶120.

While in custody on the present case, Barrett made hundreds of phone calls. On these calls, he showed no remorse or regret. Instead, he threatened the victims with violence and vindictive lawsuits, claiming that S.F. and K.G. designed a conspiracy to ruin his life. For example, on October 17, 2022, Barrett stated "something will happen… [to the victims] that's for sure…in the courts or not." PSR ¶ 30. On November 14, 2022, Barrett claims to a friend that S.F. told K.G. "fuck that you're a girl, you can say whatever you want, say he raped you and put him in jail." On February 26, 2023, Barrett told his father that he is looking forward to "legal revenge" and he hopes K.G., and S.F. will get jail time for reporting him for assaulting them.

## II. DISCUSSION OF DEFENSE OBJECTIONS TO THE PSR

### A. Barrett's Arrests and Other Criminal Conduct

Barrett objects to the Court's considering Barrett's arrests or other criminal conduct as irrelevant and prejudicial. Dkt. 248. There is no reference to a specific paragraph from the PSR in Barrett's objection. It appears his objection is in reference to a January 2022 arrest for Battery on a Spouse and Annoying Phone Call: Obscene/Threat. PSR ¶110. This arrest was not used to calculate Barrett's criminal history score, but it is nonetheless part of a comprehensive record of Barrett's history and characteristics. 18 U.S.C. §3553; *See also* 18 U.S.C. §3661 ("no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense

which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence). *United States v. Loaiza-Sanchez*, 622 F.3d 939, 942 (8th Cir. 2010) (noting that prior criminal conduct "whether or not related to the offense of conviction, it is part of 'the history and characteristics of the defendant' that the district court 'shall consider' in imposing an appropriate sentence); *United States v. Mateo*, 471 F.3d 1162, 1168 (10th Cir. 2006) (noting that under § 3661 a court may consider prior conduct that did not lead to a conviction). This information is sufficiently reliable as the Probation Officer reviewed the law enforcement report in outlining the details of this arrest. The Court should overrule this objection and give this arrest any weight the Court deems appropriate.

### B. The Offense Conduct

Barrett objects to the offense conduct outlined in paragraphs 4-31 of the PSR and asks the Court to only rely on the testimony adduced at trial. Dkt. 248. Barrett failed to outline with any specificity facts contained in those paragraphs that were not adduced at trial. Indeed, the facts outlined in those paragraphs are consistent with K.G.'s testimony at trial. Even if there are facts contained therein that were not presented at trial, this Court is not limited to the witness testimony at trial when adjudging a sentence. 18 U.S.C. §3553; 18 U.S.C. §3661. The information contained in these paragraphs is reliable because it is premised on Grand Jury testimony, law enforcement reports and testimony adduced at trial. Accordingly, Barrett's objection should be overruled.

### C. Barrett Assaulted K.G. With Force

Barrett objected to application of the four-level enhancement under USSG §2A3.1(b)(1) as applied to the aggravated sexual abuse charges (Counts One and Three). Dkt. 248. Barrett's objections simply repeat his defense at trial – that he did not use force to assault K.G. Yet, the jury found Barrett guilty of aggravated sexual abuse which necessarily includes an element of force. 18 U.S.C. §2241(a)(1) ("Whoever…knowingly causes another person to engage in a sexual act…by using force[1] against that other person). The jury rejected this argument, and this Court should similarly reject it.

---

[1] Aggravated sexual abuse "requires a showing of actual force." *United States v. Fulton*, 987 F.2d 631, 633 (9th Cir. 1993). However, the force need only be force sufficient to overcome. *Fulton*, 987 F.2d at 633 ("the force requirement is met when the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact.") (internal quotation marks and citations omitted); *United States v. Archdale*, 229 F.3d 861, 868 (9th Cir. 2000).

Application of the four-level enhancement is supported by K.G.'s testimony at trial where she outlined multiple instances of Barrett using force to subdue her resistance. With respect to Count One, almost immediately when she sat next to Barrett, he "grabbed her and started kissing her 'very aggressively and forcefully.'" PSR ¶13. When K.G. manifested lack of consent by moving away and attempting to search for her missing nose ring, he responded by "grabb[ing] her more forcefully and pinn[ing] her to the ground." PSR ¶14. Barrett did not stop there, but "tore her clothes and choked her with his hand around her neck." *Id*. The force was so extensive that K.G. feared for her life. *Id*. With respect to Count Three, after Barrett and K.G. got into the shower, K.G. shrunk herself into the corner. PSR ¶19. Barret, in response, "grabbed her" and then "pressed himself up against her and forced her legs open." *Id*. The jury's finding of force for Count One and Three is consistent with K.G.'s testimony. The four-level enhancement under USSG §2A3.1(b)(1) is proper.

### D. Barrett's Obstruction of Justice

Barrett objects to application of USSG §3C1.1 two-level enhancement for obstruction of justice. Dkt. 248. Barrett claims that the facts supporting the two-level enhancement are "entirely speculative" because they were not testified to at trial. *Id*. The factual information contained in paragraphs 51, 57, and 63 is based, in part, off of recorded phone calls that Barrett made while in custody in this case. The other facts were derived from Barrett's interview with law enforcement on July 14, 2021. Both sources of information are reliable, and the facts are far from speculative.

### E. Barrett's Criminal History

Barrett objects to his criminal history score of 9 as overstated. Dkt. 248. Barrett's prior criminal history is properly calculated under U.S.S.G § 4A1.1 and serious. Barrett provided no authority for the position that his criminal history is overstated and there is no reason this Court should not consider these convictions consistent with U.S.S.G § 4A1.1. Barrett's objection should be overruled.

Barrett's criminal history is particularly aggravating in light of the conduct of this case. In 2005, a Yosemite Park Ranger was involved in giving Barrett a DUI ticket. PSR ¶ 2. As a result, Barrett sought out the Ranger's personal vehicle and slashed the tires of the vehicle. *Id*. Years later, in 2016, Barrett made homicidal threats to this Ranger's juvenile child, all stemming from a DUI citation a decade prior. PSR ¶121. This conviction is evidence of Barrett's danger to those who hold him

5

accountable. Not only that, but despite pleading guilty, Barrett now claims that he is innocent of this crime. PSR ¶120. The record therefore shows that Barrett is incapable of acknowledging wrongdoing, even of a decades-old misdemeanor conviction resulting from a guilty plea. Barrett refusal to accept the legal consequences of his actions means that the Court should therefore impose a sentence that promotes respect for the law and provides just punishment. *United States v. Cephus*, No. 21-2673, 2022 WL 4075589, at *1 (7th Cir. Sept. 6, 2022) (upholding denial of compassionate release; noting that refusal to accept responsibility counseled against release).

      In 2008, Barrett assaulted his ex-girlfriend, B.H., in the presence of witnesses. PSR ¶ 100. B.H. is still afraid of Barrett. While on probation for this offense, Barrett reportedly threatened the life of his probation officer. *Id*. This conviction is also notable because he was on probation for this offense at the time, he assaulted S.F. in 2010. A criminal conviction for domestic violence did not deter Barrett from harming other women. Now, Barrett claims that he did not assault B.H., contrary to the witnesses present and his guilty plea. PSR ¶120. Barrett's continued denial of any wrongdoing related to this conviction is as brazen as his violent assault on B.H. was.

      Barrett has two convictions for Driving Under the Influence of Alcohol (DUI), one from March 2016 and one from March 2018. The March 2016 DUI is notable given it was only months before Barrett raped K.G. This DUI was yet another opportunity for Barrett to take stock of his choices and how they have negatively impacted his life. Yet, as K.G. outlined at trial, Barrett excessively drank throughout the weekend and raped her multiple times.

      Finally, Barrett has a conviction for Criminal Threats from January 2022 for threatening to kill S.F., one of the FRE 413 uncharged victims who testified in this case. In 2017, S.F. learned that Barrett moved to Las Vegas, (where she lived) and climbed at the climbing gym she attended. S.F., in the interest of protecting other women at the gym, disclosed Barrett's assault on her to the gym owner. PSR ¶76. Barrett responded by harassing and threatening her for several years, even texting a friend in 2017 – 10 years after he assaulted her – "I'm sending people over to [S.F.'s] house to take care of her." PSR ¶77. In 2022 he walked into an Emergency Room and made the same homicidal threats to kill S.F. PSR ¶79. This conviction shows an escalation of Barrett's threats toward S.F.

      These convictions are not only properly calculated under U.S.S.G § 4A1.1, but they are also

6

important data points for this Court when assessing Barrett's ability to be deterred from future criminal conduct and rehabilitated, such that he does not pose a danger to society.

### F. The Court's Consideration of FRE 413 Uncharged Victims

Barrett objects to the Court considering victim impact statements submitted by FRE 413 victims who testified at trial: S.F., J.V., and E.B. Dkt. 248. Although these women are not victims of the crimes for which Barrett was convicted, their statements are nonetheless relevant towards Barrett's history and characteristics. 18 U.S.C. §3553. Further, such statements are within 18 U.S.C. Section 3661's broad expression of what courts may consider at sentencing. *See e.g., United States v. Case*, 434 Fed. App'x 522, 522 (6th Cir. 2011) (upholding trial court's consideration of victim impact statements from individuals who did not fit within statutory definition of victim); *United States v. Quincoces*, 503 Fed. App'x 800, 804 (11th Cir. 2013); *United States v. Shine*, No. 17-CR-28-FPG-JJM, 2020 WL 32937, at *1 (W.D.N.Y. Jan. 2, 2020). Finally, their statements are reliable because they concern sexual assaults by the defendant that were the subject of testimony at trial. Therefore, the Court should overrule Barrett's objection and consider S.F., J.V., and E.B.'s victim impact statements.

## III. SENTENCING RECOMMENDATION

### A. Probation's Recommendation

The PSR correctly calculates the combined total offense level for all three counts as 39, and his criminal history category as IV, resulting in a guideline range of 360 months to life. PSR ¶ 69, 107, 136. Probation requests this Court sentence Barrett to a term of 480 months for his crimes.

### B. The Victims' Recommendation

K.G., in her victim impact statement, urges this Court to sentence Barrett to a life sentence. K.G. considered it her "civic responsibility to do so." Dkt. 249 (K.G.'s Victim Impact Statement) at 7. K.G.'s father also urges this Court to sentence Barrett to a term of life in prison. Government Exhibit 1 (K.G.'s Father's Statement). S.F. and E.B. join K.G. in her request. All three women fear that if Barrett is ever released, he will kill them.

### C. The Government's Recommendation

The Government requests that the Court impose a within-Guidelines sentence to the statutory maximum in this case, which is life. A sentence that is within the Guidelines, even when it is a life

sentence for aggravated sexual abuse under 18 U.S.C. § 2241, suggests that a court acts reasonably. *United States v. Longee*, 407 Fed. App'x 122, 124 (9th Cir. 2010) (upholding as substantively reasonable a term of life in prison for aggravated sexual abuse of a victim confined to a wheelchair). A within-Guidelines sentence of life imprisonment is appropriate because balancing the 18 U.S.C. 3553(a) factors demonstrates that a significant sentence is warranted. A lifetime sentence is the only sentence that will protect society, account for the nature and circumstances of the offenses, provide just punishment, and deter Barrett from future violence.

### 1. The Nature and Circumstances of the Offenses

The nature and circumstances of the offenses warrants a within-Guidelines sentence of the of life imprisonment. The core of the crimes – repeated rapes on K.G. in two days – is violence that forever changed the trajectory of K.G.'s life. K.G. at 19, "brimmed with love for humanity and was hungry to experience all life had to offer." Dkt. 249 at 8. Rock-climbing quickly became a passion for her, and with it came a community where she felt accepted and valued. She was innocent, naïve, and she had big dreams. K.G. recalls that on her solo hike to Cathedral Lakes she thought "*This is where I'm meant to be*." Dkt. 249 at 11. That first night in Yosemite, Barrett took all of that from K.G. And then he did it two more times the next day.

K.G.'s victim impact statement powerfully and extensively outlines the trauma and impact of Barrett's actions. The impact will be lifelong. Only a sentence of life imprisonment can account for the seriousness of Barrett's violation of K.G.

Though personally devastating to K.G., the Court should also consider the impact of Barrett's crime on relevant communities and the harm to the public. *Cf. United States v. Edwards*, 595 F.3d 1004, 1020 (9th Cir. 2010) (Bea, J., concurring) (noting that sentencing court should consider not only the defendant's community but the community at large under § 3553(a)(2)(B)). Barrett's crimes should be assessed for their impact on Yosemite National Park, a place which millions of people visit each year, believing they are safe within the confines of its beauty. Moreover, as extensively testified to at trial, the rock-climbing community is a small community that is built on a foundation of trust. Rock climbers trust fellow climbers, quite literally, with their lives. Barrett was a leader in this community – "a hero

and a giant" – and with his status came an inherit trust that he abused.[2] Dkt. 249 at 17. Instead of using his status to foster his community, he repeatedly assaulted women in his own community. When his victims began to tell, Barrett responded by lashing out publicly with threats and intimidation directed towards his victims. Barrett's assaults have damaged the fabric of the rock-climbing community.

His actions have not only impacted K.G. S.F. described feeling like she "was drowning in fear and despair." Dkt. 249 at 4; (S.F.'s Victim Impact Statement). S.F., a successful publicist, and rock-climber, segments her life in two phases: before Barrett assaulted her and after. *Id*. at 1. The woman she was before Barrett assaulted her "is like some faded figure in an old photograph." *Id*. After Barrett assaulted her, he made sure he did not forget it – he threatened her online and through third parties for several years. This caused S.F. to "live in a constant state of high alert," as she "wasn't safe anywhere because the internet and Mr. Barrett were everywhere." *Id*. at 4, 3. In short, the devastation Barrett inflicted on her life goes beyond a disturbing physical act.

E.B. also described to the Court the deep impact that Barrett's crimes inflicted on her had. Dkt. 247-6 at 1. She lost her sense of joy and safety. *Id*. She struggled with an eating disorder and feelings of insecurity and paranoia. *Id*. Although J.V. did not submit a victim impact statement to the Court, that is not because the impact is lacking. J.V. testified at trial "it's been nine years and I spent eight years trying to forget and the last year trying to remember" or words to that effect. The violence that Barrett inflicted on K.G. and his community, including S.F., E.B., and J.V., warrants a sentence that reflects the seriousness of the offenses.

### 2. The History and Characteristics of the Defendant

Barrett has a long history of victimizing women with physical and sexual violence. A long history of sexual violence provides support for a district court's imposition of a life sentence for a sexual assault crime. *United States v. Mix*, 457 F.3d 906, 913 (9th Cir. 2006). Here, Barrett's sexual assaults span approximately seven years. His violence against women occurred over more than a decade. Therefore, his history and characteristics weigh in favor of a [life sentence].

---

[2] G.A. did not testify at trial, but reported to law enforcement that Barrett stalked and harassed her. PSR ¶78-79. She did not feel comfortable coming forward with the details because of Barrett's threats to her. *Id*. G.A. also reported being aware of other victims of Barrett who were similarly scared to come forward. *Id*. B.H. did not testify at trial, but Barrett was convicted of assaulting her in 2008. PSR ¶ 98. M.F. did not testify at trial but reported living in fear of Barrett. PSR ¶ 89-92.

Neither the PSR nor Barrett identify significant history and characteristics of Barrett that warrant leniency when compared against his history of sexual and interpersonal violence. Barrett had a "pretty good" childhood with loving, supportive parents and was not exposed to sexual or physical violence. PSR ¶115. Growing up, he was "popular, happy, and outgoing." *Id*. His popularity continued into his adulthood as he pursued a career in professional rock climbing and published renowned guidebooks. By all accounts at trial, Barrett was respected and admired in the rock-climbing community. Barrett had every advantage to be successful in life, but he repeatedly chose to violently hurt women in his community. Barrett's history and characteristics do not warrant any leniency for his violent offenses.

### 3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment for the Offense

The justification for these factors overlaps with the nature of circumstances of the offense. In addition, the need to promote respect for the law and provide just punishment is particularly relevant in this case in light of Barrett's refusal to accept responsibility, for any of his crimes. A defendant's refusal to accept responsibility for a violent sexual offense supports imposition of a life sentence. *Mix*, 457 F.3d at 913 (upholding life sentence; noting that defendant characterized his offense as "unintentional"). Like the defendant in *Mix*, Barrett denies any wrongdoing and refuses to acknowledge the harm he caused. According to Barrett, his legal woes are simply the result of "weird" situations that didn't work out in his favor. PSR ¶120. Barrett asks this Court to find that he is a victim. The evidence has not born that out – rather, the evidence shows that Barrett has committed repeated, violent physical and sexual assaults, has sought retribution against those who have tried to hold him accountable, and is a dangerous sexual predator. The Court's sentence should clearly send Barrett that message, to reflect the seriousness of his offenses, promote respect for the law, and provide just punishment.

### 4. The Need to Afford Adequate Deterrence

The sentence imposed must accomplish specific and general deterrence. As a matter of specific deterrence, as outlined above, Barrett has refused to accept responsibility. It leaves the clear impression that Barrett has not been deterred, and his past history reinforces this impression. The Government's recommended term of life will specifically deter Barrett because he will remain in custody for the rest of his life.

General deterrence is also critical here. There are others who wield great influence on the rock-climbing community, and society at large. This case presents strong deterrent value to say that violent, repeated, sexual predators will be punished to the fullest extent of the law.

### 5. The Need to Protect the Public

Barrett presents a danger to women in society, including K.G., S.F., J.V. and E.B. The common thread amongst his victims is clear: fear. Fear that if Barrett were ever released, he would continue to threaten and harass them – at best. At worst, they fear for their lives, rightfully so, in light of Barrett's history of violence and threats. A life sentence is the only sentence that will allow them to find the peace that comes with safety.

## IV. CONCLUSION

"There is only one way to stop a serial rapist and seasoned criminal like [Barrett]. It is to not give him another chance to prove what he is capable of." (K.G.'s victim impact statement at 5). Indeed, Barrett has already shown this Court what he is capable of. A sentence of life in confinement properly balances the factors in 18 U.S.C. §3553.

Dated:  May 15, 2024

PHILLIP A. TALBERT
United States Attorney

By:  /s/ MICHAEL G. TIERNEY
     /s/ ARIN C. HEINZ
ARIN C. HEINZ
MICHAEL G. TIERNEY
Assistant United States Attorneys